1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTORIA A. AMELINA, an individual; and A.A.; D.S. and B.S., each individuals and minors by and through their Guardian Ad Litem, Victoria A. Amelina,<br><br>                                                  Plaintiffs,<br>          vs.<br>MANUFACTURERS AND TRADERS TRUST COMPANY aka M&T BANK; SAFEGUARD PROPERTIES, LLC; and THE WOLF LAW FIRM, A Law Corporation,<br><br>                                                  Defendants. | CASE NO. 14cv1906-WQH-NLS<br><br>ORDER |

HAYES, Judge:

The matters before the Court are (1) the Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 18), filed by Defendant Manufacturers and Traders Trust Company ("M&T"), (2) the Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 20), filed by Defendant Safeguard Properties, LLC ("Safeguard"), and (3) the Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 28), filed by Defendant Wolf Law Firm.

**BACKGROUND**

On August 13, 2014, Plaintiff Victoria Amelina, and Plaintiffs A.A., D.S., and B.S., each minors by and through their Guardian Ad Litem, Victoria Amelina, initiated this action by filing a Complaint in this Court.  (ECF No. 1).

1    On October 27, 2014, Plaintiffs filed a joint motion for leave to file a first

2 amended complaint (ECF No. 11), and a proposed first amended complaint (ECF No.

3 12). On October 30, 2014, the Court issued an Order granting the joint motion for leave

4 to file a first amended complaint, and the proposed first amended complaint (ECF No.

5 12), became the operative pleading. (ECF No. 13).

6    On November 13, 2014, Defendant M&T filed the Motion to Dismiss Plaintiffs'

7 First Amended Complaint. (ECF No. 18). On December 1, 2014, Plaintiffs filed an

8 opposition. (ECF No. 22). On December 8, 2014, Defendant M&T filed a reply. (ECF

9 No. 27).

10    On November 13, 2014, Defendant Safeguard filed the Motion to Dismiss

11 Plaintiffs' First Amended Complaint. (ECF No. 20). On December 1, 2014, Plaintiffs

12 filed an opposition. (ECF No. 23). On December 8, 2014, Defendant Safeguard filed

13 a reply. (ECF No. 26).

14    On December 12, 2014, Defendant Wolf Law Firm filed the Motion to Dismiss

15 Plaintiffs' First Amended Complaint. (ECF No. 28). On December 29, 2014, Plaintiffs

16 filed an opposition. (ECF No. 32). On January 5, 2014, Defendant Wolf Law Firm

17 filed a reply. (ECF No. 33).

18                          **ALLEGATIONS OF COMPLAINT**

19    "Sometime before July 25, 2013, [Plaintiff Victoria Amelina] is alleged to have

20 incurred certain financial obligations for a home mortgage account with Bank of

21 America." (ECF No. 12 ¶ 30). "Sometime thereafter, but before July 25, 2013,

22 [Plaintiff Victoria Amelina] allegedly fell behind in the payments allegedly owed on the

23 alleged debt." *Id.* ¶ 33. "[T]he alleged debt was assigned, placed, or otherwise

24 transferred to Lakeview Loan Servicing who subsequently assigned, placed, or

25 otherwise transferred the debt to M&T Bank for collection." *Id.* ¶ 34.

26    "On or about July 25, 2013, M&T Bank mailed a letter to [Plaintiff Victoria

27 Amelina]" which "expressed that the 'servicing' of [Plaintiff Victoria Amelina's]

28 mortgage loan account was being transferred from Bank of America to M&T Bank,

1    effective on or about August 2, 2013; that 'Bank of America will stop accepting

2    payments on August 1, 2013;' and '[M&T Bank] will begin accepting payments from

3    [Plaintiff Victoria Amelina] effective August 2, 2013.'" *Id*. ¶ 35-36. "After Lakeview

4    Loan Servicing transferred the account to M&T Bank for collection, Plaintiff began

5    receiving collection letters from M&T Bank." *Id*. ¶ 37.

6          "On or about August 14, 2013, M&T Bank mailed a letter to [Plaintiff Victoria

7    Amelina]." *Id*. ¶ 38.  The letter stated, in part:

8          1) M&T Bank was now servicing [Plaintiff Victoria Amelina's] mortgage;

9          2) The amount of debt in connection with the mortgage was
           '$236,704.14;'

10

11         3) Pursuant to the FDCPA, [Plaintiff Victoria Amelina] had thirty days to
           dispute the amount of debt and request a verification of the alleged debt;
           and

12

13         4) The name of the creditor to whom the debt was owed was a company
           called 'Lakeview Loan Servicing'

14   *Id*. ¶ 41.  "Twenty three days later, on September 9, 2013, [Plaintiff Victoria Amelina]

15   disputed the debt, in writing, with M&T Bank, consistent with the thirty day time

16   requirement of the FDCPA and California's Rosenthal Act for disputing debt." *Id*. ¶

17   43.  "Consequently, pursuant to 15 U.S.C. § 1692g(b), and Cal. Civ. Code § 1788.17,

18   M&T Bank was now required to cease collection of the debt until [] it obtained

19   verification of the debt and produced that verification to [Plaintiff Victoria Amelina],

20   in writing." *Id*. ¶ 44.

21         "[F]rom September 17, 2013 through February 5, 2014, M&T Bank sent multiple

22   collection letters to [Plaintiff Victoria Amelina], each time demanding payment, and

23   each time violating the FDCPA and California's Rosenthal Act in that they were

24   collecting without verification." *Id*. ¶ 46.  "By communicating with [Plaintiff Victoria

25   Amelina] by mail before validating the debt, as required pursuant to 15 U.S.C. §

26   1692g(b), M&T Bank violated 15 U.S.C. § 1692g and Cal. Civ. Code § 1788.17." *Id*.

27   ¶ 47.  "[T]he natural consequence of [the letters] was to harass, oppress, or abuse a

28   person in connection with the collection of a debt." *Id*. ¶ 48.  "Throughout these letters,

1   M&T Bank repeated, and falsely, stated, and implied, that M&T Bank was about to

2   foreclose on [Plaintiff Victoria Amelina's] property when that was not their actual

3   intent." *Id.* ¶ 51. "M&T Bank initiated this onslaught of letters as to Plaintiff in an

4   effort to abusively mislead and coerce her into paying more than was actually owed to

5   M&T Bank." *Id.* ¶ 52. "During all relevant times, M&T Bank refused to provide

6   validation or fully explain who 'Lakeview Loan Servicing' was and the relationship

7   between the different entities listed in the letters." *Id.* ¶ 53.

8        "Subsequently, at the instruction of M&T, Safeguard Properties, LLC sent

9   [Plaintiff Victoria Amelina] a pink postcard with printing clearly visible on both sides

10  to anyone who had access to Plaintiff's mail or processed it." *Id.* ¶ 54. "This Postcard

11  was sent to [Plaintiff Victoria Amelina] for the purpose of conveying of information

12  regarding a debt directly or indirectly to [Plaintiff Victoria Amelina], and was also for

13  the purpose of collect [sic] this alleged debt." *Id.* ¶ 56.   The postcard stated the

14  following:

15      Dear Property Resident

16      Safeguard Properties, LLC is conducting a monthly audit on behalf of
        M&T Bank in order to verify the occupancy of your property.

17

18      Please contact our Special Operator at 866-969-9859 to confirm only that
        you are presently residing at this property.

19      Thank You.

20      Mortgager: You are entitled to contact M&T Bank regarding a face to face
        interview at our Buffalo NY Office.  800-724-1633.

21

22  *Id.* ¶ 57. "The purposes [of] this communication with [Plaintiff Victoria Amelina] was

23  to convey information regarding a debt directly or indirectly to [Plaintiff Victoria

24  Amelina], specifically, the name and telephone number of M&T Bank to encourage

25  [Plaintiff Victoria Amelina] to contact M&T Bank so that M&T Bank could collect the

26  debt to be owed, in violation of the FDCPA and California's Rosenthal Act." *Id.* ¶ 58.

27  "Plaintiff was startled, confused, and embarrassed by this postcard." *Id.* ¶ 60.

28       "On January 4, 2014, Safeguard, at the instruction of M&T Bank sent an agent

    to Plaintiffs' home." *Id.* ¶ 64.  "At the instruction of Safeguard and M&T [B]ank, the

1    intruder attempted to physically enter the home of [Plaintiff Victoria Amelina] and her
2    minor children." *Id.* ¶ 65. "[Plaintiff Victoria Amelina] was not home during the
3    incident, however, her children, A.A.; D.S.; and B.S., who were nine, twelve, and
4    seventeen years of age, respectively, were at home." *Id.* ¶ 66. "During this incident,
5    the intruder attempted to force entry into [the] home." *Id.* ¶ 67. "A.A. repeatedly asked
6    who was at the door, and the intruder failed to identify himself, responding only by
7    demanding that A.A. open the door and allow him immediate entry into the property."
8    *Id.* ¶ 69. "The intruder then continued to batter on the door with more force and
9    eventually told A.A. that if she did not open the door immediately, her parents would
10   'be in big trouble.'" *Id.* ¶ 71.

11        "[Plaintiff Victoria Amelina] returned home shortly thereafter and found that the
12   children were in shock due to M&T Bank's actions." *Id.* ¶ 76. "[Plaintiff Victoria
13   Amelina's] 9 year old daughter, A.A. was particularly traumatized by this incident, and
14   unable to speak." *Id* ¶ 77. "A.A. was also having difficulty breathing due to the anxiety
15   and stress caused by M&T Bank's agent." *Id.* ¶ 78. "At one point, A.A. stated to
16   Victoria that she feared for her safety, and the safety of her parents, because she was
17   told that if she did not open the door to M&T Bank's agent, her parents would be in 'big
18   trouble.'" *Id.* ¶ 79.

19        "Subsequently, on January 28, 2014, M&T Bank sent another letter to [Plaintiff
20   Victoria Amelina], in an attempt to collect a debt, still without verify [sic] the alleged
21   debt." *Id.* ¶ 83. "This letter stated, in part, that [Plaintiff Victoria Amelina's] 'mortgage
22   documents have been forwarded to our attorney's office for foreclosure proceedings'
23   and that 'All communications concerning the mortgage must now be directed to: Wolf
24   Law Firm...'" *Id.* ¶ 85. "Through this conduct, M&T Bank threatened to take action
25   that cannot legally be taken or that was not intended to be taken, in violation of 15
26   U.S.C. § 1692e(5) and Cal. Civ. Code § 1788.17." *Id.* ¶ 86. "Through this conduct,
27   M&T Bank took or threatened to take any nonjudicial action to effect dispossession or
28   disablement of property when there was no present intention to take possession of the

1   property in violation of 15 U.S.C. § 1692f(6)(B) and Cal. Civ. Code § 1788.17." *Id*. ¶
2   87.

3          "Subsequently, on January 30, 2014, M&T Bank sent two more letters to
4   [Plaintiff], stating that the foreclosure process has begun but [Plaintiff Victoria
5   Amelina] still had alternatives if she contacted M&T Bank, even though [Plaintiff
6   Victoria Amelina] had previously been told not to contact M&T Bank but contact only
7   Wolf Law Firm." *Id*. ¶ 89. "In reality, M&T Bank had not begun foreclosure
8   proceedings, and was using this false, deceptive, or misleading representation or means
9   in connection with the collection of debt to coerce payment from [Plaintiff Victoria
10  Amelina], in violation of the FDCPA and California Rosenthal Act." *Id*. ¶ 90.

11         "On April 28, 2014, the Wolf Law Firm sent Plaintiff ten identical letters....
12  Plaintiff received all of these letters at once a few days later." *Id*. ¶ 92. "The purpose
13  for sending all of these letters from a law firm was to intimidate and embarrass []
14  [Plaintiff Victoria Amelina] and her family and to alert third parties that [Plaintiff
15  Victoria Amelina] had legal problems." *Id*. ¶ 93. "In response, Plaintiff sent Defendant
16  a request for validation within 30 days of receiving Wolf's April 28, 2014 letters, just
17  as she had previously done with M&T Bank." *Id*. ¶ 94.

18         "[O]n or about July of 2014 Wolf continued its abusive behavior and sent ten
19  (10) more copies of another letter dated July 22, 2014." *Id*. ¶ 95. "These letters failed
20  to provide Plaintiff with validation of the debt in violation of the FDCPA and
21  California's Rosenthal Act." *Id*. ¶ 97. "The purpose of sending all of these letters from
22  a law firm was to intimidate and embarrass [Plaintiff Victoria Amelina] and her family
23  and to alert third parties that [Plaintiff Victoria Amelina] had legal problems." *Id*. ¶ 98.

24         "[O]nce Wolf [r]ecorded a Notice of Trustee Sale, Wolf mailed an additional
25  twenty-two copies to [Plaintiff Victoria Amelina] of the notice." *Id*. ¶ 99. 'Wolf's only
26  purpose of sending twenty-two letters is to intimidate and harass Plaintiff." *Id*. ¶ 100.
27  "Again, by communicating with Plaintiff by mail before validating the debt, as required
28  pursuant to 15 U.S.C. § 1692g(b), Defendant violated 15 U.S.C. § 1692g. Because this

communication did not comply with 15 U.S.C. § 1692g, this communication also violated Cal. Civ. Code § 1788.17." *Id.* ¶ 102.

"On at least two other occasions, [Plaintiff Victoria Amelina's] family noticed strangers conducting surveillance on Plaintiffs' home, which included again trying to open Plaintiffs' entrance door, looking through windows, and taking pictures of the outside and inside of Plaintiffs' home (through the windows)." *Id.* ¶103. "In reality, these visits by Safeguard, at the instruction of M&T Bank, were intimidation attempts, which Safeguard and M&T Banktry to justify by stating that the intrusions are simply efforts to secure the property." *Id.* ¶ 105. "Shortly thereafter, [Plaintiff Victoria Amelina] began noticing that Defendant was charging her for 'Home Inspections' on her monthly mortgage statements. The dates referenced for the 'Home Inspection' entries on [Plaintiff Victoria Amelina's] monthly mortgage statements from M&T Bank were consistent with the dates when [Plaintiff Victoria Amelina] and Plaintiff's family noticed strangers conducting surveillance around Plaintiffs' home in order to stalk and harass Plaintiff and their [sic] family." *Id.* ¶ 106. "Through this conduct, M&T Bank engaged in conduct the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt. Consequently, M&T Bank violated 15 U.S.C. § 1692d." *Id.* ¶ 107. "These charges were not expressly authorized by the agreement creating the debt or permitted by law.... Consequently, M&T Bank violated 15 U.S.C. § 1692f(1), and Cal. Civ. Code § 1788.17." *Id.* ¶ 108-09.

"As a result of M&T Bank's illegal behavior, [Plaintiff Victoria Amelina] and Plaintiff's family have not felt safe in their own home for months, and are in constant fear for their physical safety as well as having to endure the mental anguish that such conduct brings. [Plaintiff Victoria Amelina] and Plaintiff's family have been forced to modify the way they conduct their day-to-day lives in order to at least diminish M&T Bank's impact on them through their collection tactics." *Id.* ¶ 110. "A.A. is afraid to sleep without their [sic] lights on, out of fear that M&T Bank's agent(s) will try to break into the house again." *Id.* ¶ 112. "[Plaintiff Victoria Amelina] is experiencing intense

1   anxiety, and has difficulty sleeping at night, causing her to be drowsy and lethargic."

2   *Id*. ¶ 113. "[Plaintiff Victoria Amelina] feels helpless and fears for the safety of herself

3   and her family." *Id*. ¶ 114. "As a result of M&T Bank's relentless collection tactics

4   [Plaintiff Victoria Amelina] has been diagnosed with severe depression and anxiety and

5   has been prescribed anti-depressant medication." *Id*. ¶ 115. "[Plaintiff Victoria

6   Amelina] now regularly attends sessions with a psychiatrist to help her cope with her

7   anxiety and depression." *Id*. ¶ 116. "Defendants have continued sending collection

8   letters to [Plaintiff Victoria Amelina], which aggravates [Plaintiff Victoria Amelina's]

9   stress, anxiety, and depression." *Id*. ¶ 117.

10       Plaintiffs' assert five claims including: (1) violation of the Fair Debt Collection

11   Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq*.; (2) violation of the Rosenthal

12   Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.32; (3) negligent

13   infliction of emotional distress; (4) intentional infliction of emotional distress; and (5)

14   invasion of privacy. (ECF No. 1 at 16-20).

15                              **LEGAL STANDARD**

16       Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state

17   a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of

18   Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must

19   contain ... a short and plain statement of the claim showing that the pleader is entitled

20   to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where

21   the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

22   legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

23       "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

24   requires more than labels and conclusions, and a formulaic recitation of the elements

25   of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

26   (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must

27   accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662,

28   679 (2009). However, a court is not "required to accept as true allegations that are

1  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

2  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a

3  complaint to survive a motion to dismiss, the non-conclusory factual content, and

4  reasonable inferences from that content, must be plausibly suggestive of a claim

5  entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.

6  2009) (quotations omitted).

7  Pro se complaints are held to a less stringent standard than formal pleadings by

8  lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). A pro se plaintiff's

9  complaint must be construed liberally to determine whether a claim has been stated.

10 *See Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001). "Although a pro se litigant

11 ... may be entitled to great leeway when the court construes his pleadings, those

12 pleadings nonetheless must meet some minimum threshold in providing a defendant

13 with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66

14 F.3d 193, 199 (9th Cir. 1995).

15 **FEDERAL LAW CLAIM**: **FDCPA**

16 The FDCPA prohibits debt collectors from engaging in abusive, deceptive and

17 unfair practices in the collection of consumer debts. *See* 15 U.S.C. § 1692. To state a

18 claim under the FDCPA, a plaintiff must allege facts that establish (1) the plaintiff has

19 been the object of collection activity arising from a consumer debt; (2) the defendant

20 attempting to collect the debt qualifies as a "debt collector" under the FDCPA; and (3)

21 the defendant has engaged in a prohibited act or has failed to perform a requirement

22 imposed by the FDCPA. *Pratap v. Wells Fargo Bank, N.A.*, No. 12-CV-06378-MEJ,

23 2014 WL 3884413, at *8 (N.D. Cal. Aug. 7, 2014) (citing *Gomez v. Wells Fargo Home

24 Mortg.*, 2011 WL 5834949, at *5 (N.D.Cal. Nov. 21, 2011)). "The term 'debt collector'

25 means any person who uses any instrumentality of interstate commerce or the mails in

26 any business the principal purpose of which is the collection of any debts, or who

27 regularly collects or attempts to collect, directly or indirectly, debts owed or due or

28 asserted to be owed or due another." 15 U.S.C. § 1692a. The complaint must plead

1 "factual content that allows the court to draw the reasonable inference" that Defendants

2 are "debt collectors." *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208 (9th

3 Cir. 2013) (finding that Plaintiff's complaint "fails to provide any factual basis from

4 which we could plausibly infer that the principal purpose of Wells Fargo's business is

5 the collection of debt.  Rather, the complaint's factual matter, viewed in a light most

6 favorable to the Schlegels, establishes only that debt collection is some part of Wells

7 Fargo's business, which is insufficient to state a claim under the FDCPA.").

### 1.     Defendant M&T

9       Defendant M&T contends that the FDCPA does not apply to loan servicers

10 because a mortgage servicing company is not a "debt collector" under the FDCPA.

11 Defendant M&T contends that it is excepted from the FDCPA's definition of "debt

12 collector" because it was the servicer of Plaintiff's loan before and after the loan was

13 in default.  Defendant M&T further contends that it is not a debt collector because the

14 alleged conduct attributable to Defendant M&T does not constitute debt collection.

15       Plaintiffs contend that Defendant M&T falls within the definition of a "debt

16 collector" under the FDCPA.  Plaintiffs concede that there is an exception for servicers

17 who began servicing the loans before the loan is in default, but contend that the

18 exception is not applicable in this case because the alleged debt was in default prior to

19 being acquired by Defendant M&T.

20       In order to fall within the first definition of "debt collector," Plaintiffs' first

21 amended complaint must provide a factual basis to plausibly infer that the principal

22 purpose of Defendant M&T's business is the collection of debt.  In this case, Plaintiff

23 alleges that "Defendant M&T Bank is a creditor who demanded money and property

24 from Plaintiffs and is therefore a debt collector under the FDCPA...."  (ECF No. 12 ¶

25 28).  Plaintiffs fail to allege facts that would allow the Court to draw the reasonable

26 inference that the principal purpose of Defendant M&T's business is the collection of

27 debt.

28       In order to fall within the second definition of "debt collector," Plaintiffs' first

1  amended complaint must provide a factual basis from which the Court could plausibly
2  infer that Defendant M&T regularly collect debts owed or due another. *See Schlegel*,
3  720 F.3d at 1208. The facts alleged with respect to Defendant involves conduct specific
4  to the Plaintiffs in this action. Plaintiffs fail to allege facts which show that Defendant
5  M&T regularly collects "debts owed or due or asserted to be owed or due another." 15
6  U.S.C. § 1692a. The Court concludes that Plaintiffs' first amended complaint fails to
7  allege "factual content that allows the court to draw the reasonable inference" that
8  Defendants are "debt collectors." *Schlegel*, 720 F.3d at 1208.

9              **2.      Defendant Safeguard**

10             Defendant Safeguard contends that it is not subject to the FDCPA because it is
11  not a debt collector and did not engage in debt collection. Defendant Safeguard
12  contends that the facts pled specific to Safeguard make it apparent that Safeguard's
13  business includes verifying residential occupancy, not debt collection. Defendant
14  Safeguard contends that Plaintiffs have not added any factual allegations to support
15  their conclusory claims, or to show any business activity that rises to the level of debt
16  collection. Defendant Safeguard contends that "[t]he postcard asks Plaintiff Amelina
17  for nothing more than the verification of the occupancy of her residence, and notifies
18  her that she may contact M&T Bank for an in-person meeting." (ECF No. 20-1 at 13).
19  Defendant Safeguard contends that Plaintiffs offer "only their own assumptions as to
20  some unstated, ulterior purpose of the pink postcard that was allegedly mailed by
21  Safeguard." (ECF No. 26 at 3). Defendant Safeguard further contends that if the home
22  visit is attributed to Safeguard or a Safeguard agent, Plaintiff still fails to allege facts
23  to show that the home visit constitutes a debt collection effort.

24             Plaintiffs contend that the language at the end of the postcard, "[m]ortgager: You
25  are entitled to contact M&T Bank regarding a face to face interview at our Buffalo NY
26  Office. 800-724-1633," constitutes an effort to collect a debt. (ECF No. 1 ¶ 53).
27  Plaintiffs contend that the only purpose of inviting Plaintiff Victoria Amelina to reach
28  out to M&T was to encourage and facilitate the collection of the alleged debt. Plaintiff

contends that Safeguard is a debt collector as an entity that regularly collects on behalf of another.  Plaintiffs further contend that Safeguard's behavior in sending an agent to Plaintiffs' home, peering through windows, and leaving notes goes beyond what is necessary to determine whether a property is vacant or populated.  Plaintiffs contend that the only plausible reasoning for Safeguard to do such things is to assist M&T in collecting money.

Plaintiffs' Complaint alleges:

...Safeguard Properties, LLC sent Victoria a pink postcard with printing clearly visible on both sides to anyone who had access to Plaintiff's mail or processed it.
...

This postcard was sent to Victoria for the purpose of conveying information regarding a debt directly or indirectly to Victoria, and was also for the purpose of collecting this alleged debt.

This postcard stated the following:

> Dear Property Resident
>
> Safeguard Properties, LLC is conducting a monthly audit on behalf of M&T Bank in order to verify the occupancy of your property.
>
> Please contact our Special Operator at 866-969-9859 to confirm only that you are presently residing at this property. Thank you.
>
> Mortgager: You are entitled to contact M&T Bank regarding a face to face interview at our Buffalo NY Office. 800-724-1633.

The purpose of this communication with Victoria was to convey information regarding a debt directly or indirectly to Victoria, specifically, the name and telephone number of M&T Bank to encourage Victoria to contact M&T Bank so that M&T Bank could collect the debt alleged to be owed, in violation of the FDCPA and California's Rosenthal Act.

Further, this postcard was intended to intimidate Victoria into payment of money to M&T Bank or vacate the property at which point Safeguard would then possess the property.
...

On January 4, 2014, Safeguard, at the instruction of M&T Bank, sent an agent to Plaintiffs' home (hereinafter, "the intruder").

At the instruction of Safeguard and M&T bank, the intruder attempted to physically enter the home of Victoria and her minor children.
...

- 12 -

During this incident, the intruder attempted to force entry into the home.
...

The intruder then continued to batter on the door with more force and eventually told A.A. that if she did not open the door immediately, her parents would "be in big trouble."

(ECF No. 12 ¶¶ 57-59, 64-65, 67, 71).

The Court concludes that the factual allegations regarding the postcard contains no language to support Plaintiffs' allegation that the postcard was an attempt to collect a debt. The language of the postcard specifically states that the purpose is to confirm whether or not the Plaintiffs' were currently residing at that property. With respect to the alleged attempt to force entry into Plaintiffs' home, the factual allegations do not plausibly suggest facts to show that the incident at Plaintiffs' home was an attempt to collect debt. The facts alleged fail to show that the incident was more than an attempt to verify the occupancy of the property. The Court finds that Plaintiffs' have not alleged sufficient facts to show that Defendant Safeguard was attempting to collect a debt. *See Sprewell*, 266 F.3d at 988 ("...a court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (internal citation omitted); *Moss*, 572 F.3d at 969 ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Because the Court finds that the alleged conduct of Defendant Safeguard does not constitute "debt collecting," the Court need not determine whether Defendant Safeguard is a "debt collector" under the FDCPA. *See Santoro v. CTC Foreclosure Service Corp.*, 12 Fed. Appx. 476, 480 (9th Cir. 2001) ("We need not decide whether Countrywide is a debt collector under the FDCPA because we hold that the conduct, as alleged, does not constitute 'debt collecting.'").

### 3.    Defendant Wolf Law Firm

Defendant Wolf Law Firm contends that Plaintiffs fail to show that it is a debt collector or that the alleged conduct specific to Defendant Wolf Law Firm constitutes debt collection. Defendant Wolf Law Firm contends that Plaintiffs' conclusory

1  statements that the letters were sent to intimidate and embarrass Plaintiffs is insufficient

2  to state a cause of action under the FDCPA.  Defendant Wolf Law Firm contends that

3  Plaintiffs fail to show that Defendant is regularly involved in the collection of debts.

4  Defendant Wolf Law Firm further contends that it served solely in its capacity as trustee

5  and is, therefore, immune in its non-judicial foreclosure conduct.  (ECF No. 28 at 4).

6       Plaintiffs contend that when collecting debts, attorneys are debt collectors

7  pursuant to the FDCPA.  Plaintiffs contend that attorneys are not protected by a

8  litigation privilege, even when the activity is directly related to litigation.  Plaintiffs

9  contend that Defendant Wolf Law Firm is specifically acting as a debt collector in a

10  non-judicial manner and not protected by privilege.

11       In this case, Plaintiffs allege:

12  ...on January 28, 2014, M&T Bank sent another letter to Victoria.

13  ...

14       This letter stated, in part, that Victoria's "mortgage documents have
been forwarded to our attorney's office for foreclosure proceedings" and

15  that "All communications concerning the mortgage must now be directed
to:"

16  Wolf Law Firm
2955 Main St 2nd Floor

17  Irvine CA 92614
(949) 720-9200

18  
   ...

19  
On April 28, 2014, the Wolf Law Firm sent Victoria ten (10) identical

20  letters, five (5) by certified mail, and five (5) by regular mail. Victoria
received all of these letters at once a few days later.

21  
The purpose for sending all of these letters from a law firm was to

22  intimidate and embarrass the Victoria and her family and to alert third
parties that Victoria had legal problems.

23  
In response, Victoria sent the Wolf Law Firm a request for validation

24  within 30 days of receiving Wolf's April 28, 2014 letters, just as she had
previously done with M&T Bank.

25  
Notwithstanding this, on or about July of 2014 Wolf continued its abusive

26  behavior and sent ten (10) more copies of another letter dated July 22,
2014.

27  
Again, the letter was sent by certified mail six (6) times and regular mail

28  four (4) times.
   ...

1
2

> The purpose for sending all of these letters from a law firm was to intimidate and embarrass the Victoria and her family and to alert third parties that Victoria had legal problems.

3
4

> Additionally, once Wolf recorded a Notice of Trustee Sale, Wolf mailed an additional twenty-two (22) copies to Plaintiff of the Notice; eleven (11) certified mail, and eleven (11) by routine mail.

5
6

> There is no reason to send anyone twenty-two (22) copies of any letter. Wolf's only purpose of sending twenty-two (22) letters is to intimidate and harass Victoria.

7
8

> Each time Victoria received these letters, always in an envelope from a law office, the postal carrier made comments about the incident and clearly knew that Victoria and her family had legal issues, which embarrassed Victoria.

9
10

(ECF No. 12 ¶¶ 83-101).

11

As discussed in Section III(B)(1), *supra*, in order to fall within the first definition

12

of "debt collector," Plaintiffs' first amended complaint must provide a factual basis

13

from which the Court could plausibly infer that the principal purpose of Defendant's

14

business is the "collection of any debt." 15 U.S.C. § 1692a. Plaintiffs fail to allege

15

facts that would permit the Court to draw the reasonable inference that the principal

16

purpose of Defendant Wolf Law Firm's business is the collection of debt.

17

In order to fall within the second definition of "debt collector," Plaintiffs' first

18

amended complaint must provide a factual basis from which the Court could plausibly

19

infer that Defendant's regularly collect "debts owed or due or asserted to be owed or

20

due another." 15 U.S.C. § 1692a. The facts alleged with respect to Defendant Wolf

21

Law Firm involves conduct specific to the Plaintiffs in this action and are insufficient

22

to show that Defendant Wolf Law Firm regularly collects debts owed or due another.

23

The Court finds Plaintiffs' first amended complaint fails to allege "factual content that

24

allows the court to draw the reasonable inference" that Defendants are "debt collectors."

25

*Schlegel*, 720 F.3d at 1208.

26

Plaintiffs' first amended complaint does not provide the content of the letters sent

27

by Defendant Wolf Law Firm in its alleged attempt to collect a debt. The Court

28

concludes that Plaintiffs' first amended complaint fails to allege sufficient facts to show

that Defendant Wolf Law Firm was attempting to collect a debt. *See Sprewell*, 266 F.3d

1   at 988 ("...a court is not required to accept as true allegations that are merely

2   conclusory, unwarranted deductions of fact, or unreasonable inferences.") (internal

3   citation omitted); *Moss*, 572 F.3d at 969 ("In sum, for a complaint to survive a motion

4   to dismiss, the non-conclusory factual content, and reasonable inferences from that

5   content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

6        To the extent Plaintiffs' first amended complaint alleges that Defendant Wolf

7   Law Firm sent Plaintiff copies of the Notice of Trustee Sale, activity related to non-

8   judicial foreclosure does not constitute debt collection under the FDCPA. *See Pratap*

9   *v. Wells Fargo Bank, N.A.*, No. 12-CV-06378-MEJ, 2014 WL 3884413, at *9 (N.D.

10  Cal. Aug. 7, 2014) ("[T]he overwhelming majority of courts within the Ninth Circuit

11  have concluded that nonjudicial foreclosures do not constitute debt collection under the

12  FDCPA."); *Valenzuela v. Wells Fargo Bank Nat. Ass'n*, No. CV F 13-1620 LJO JLT,

13  2014 WL 309438, at *17 (E.D. Cal. Jan. 28, 2014) ("The complaint's limited

14  meaningful allegations address foreclosure, not debt collection activities subject to the

15  FDCPA. In the absence of facts of actionable debt collection, a claim based on the

16  FDCPA is subject to dismissal."); *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193,

17  1199 (C.D. Cal. 2008) ("[F]oreclosing on a property pursuant to a deed of trust is not

18  the collection of a debt within the meaning of the FDCPA."); *Reed v. Wells Fargo*

19  *Home Mortg. Inc.*, No. 10-2133, 2010 WL 5136196, at *7 (E.D. Cal. Dec. 10, 2010)

20  ("The activity of foreclosing on a property pursuant to a deed of trust is not the

21  collection of a debt within the meaning of the FDCPA....").

22                          **STATE LAW CLAIMS**

23       The remaining four causes of action assert violations of California state laws.

24  Plaintiffs do not allege that this Court has diversity jurisdiction over this action.

25  Plaintiffs allege that this Court has supplemental jurisdiction over the state law claims

26  pursuant to 28 U.S.C. § 1367.  (ECF No. 12 at 3).

27       The federal supplemental jurisdiction statute provides: "[I]n any civil action of

28  which the district courts have original jurisdiction, the district courts shall have

1   supplemental jurisdiction over all other claims that are so related to claims in the action

2   within such original jurisdiction that they form part of the same case or controversy

3   under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A district

4   court may decline to exercise supplemental jurisdiction over a state law claim if:

5      (1) the claim raises a novel or complex issue of State law,

6      (2) the claim substantially predominates over the claim or claims over
       which the district court has original jurisdiction
7
       (3) the district court has dismissed all claims over which it has original
8      jurisdiction, or

9      (4) in exceptional circumstances, there are other compelling reasons for
       declining jurisdiction.
10
    28 U.S.C. § 1367(c).  Having dismissed the federal claims asserted by Plaintiffs against
11
    the Defendants, the Court declines to exercise supplemental jurisdiction over the state
12
    law claims against the moving Defendants pursuant to 28 U.S.C. § 1367(c).  *See San*
13
    *Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).
14
                                        **CONCLUSION**
15
           IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 18, 20, 28)
16
    are GRANTED.
17
    DATED:  March 12, 2015
18

19  **WILLIAM Q. HAYES**
    United States District Judge
20

21

22

23

24

25

26

27

28