1

2

3

4

5

6

7

8  # UNITED STATES DISTRICT COURT

9  ## SOUTHERN DISTRICT OF CALIFORNIA

10  VICTORIA A. AMELINA, an
individual; and A.A., D.S., and B.S.
11  each individuals and minors by and
through their Guardian Ad Litem,
12  Victoria A. Amelina,

13                                    Plaintiff,

14          v.

MANUFACTURERS AND
15  TRADERS TRUST COMPANY aka
M&T BANK; SAFEGUARD
16  PROPERTIES, LLC; and THE WOLF
LAW FIRM, A Law Corporation,
17
                                    Defendant.

CASE NO. 14cv1906 WQH (NLS)

ORDER

18  HAYES, Judge:

19          The matters before the Court are (1) the Motion to Dismiss Plaintiffs' Second

20  Amended Complaint (ECF No. 48), filed by Defendant Manufacturers and Traders

21  Trust Company ("M&T"), (2) the Motion to Dismiss Plaintiffs' Second Amended

22  Complaint (ECF No. 49), filed by Defendant Safeguard Properties, LLC ("Safeguard"),

23  and (3) the Motion to Dismiss Plaintifs' Second Amended Complaint (ECF No. 50),

24  filed by Defendant Wolf Law Firm.

25                          **BACKGROUND**

26          On August 13, 2014, Plaintiff Victoria Amelina, and Plaintiffs A.A., D.S., and

27  B.S., each minors by and through their Guardian Ad Litem, Victoria Amelina, initiated

28  this action by filing a Complaint in this Court.  (ECF No. 1)  On October 30, 2014, the

1  Court issued an Order granting the joint motion for leave to file a first amended
2  complaint, and the proposed first amended complaint ("FAC") (ECF No. 12) became
3  the operative pleading.  (ECF No. 13).

4  On March 12, 2015, the Court granted Defendants' Motions to Dismiss (ECF
5  Nos. 18, 20, 28).  (ECF No. 35).  The Court concluded that Plaintiffs' FAC failed to
6  allege sufficient facts to state a claim under the Fair Debt Collection Practices Act
7  ("FDCPA") against any of the Defendants.  The Court concluded that the FAC failed
8  to allege facts sufficient to allow the Court to draw the inference that Defendant M&T
9  was a "debt collector" subject to FDCPA regulations.  *Id.* at 11.  The Court concluded
10 that the FAC failed to allege facts sufficient to support Plaintiffs' allegation that
11 Defendant Safeguard "was attempting to collect a debt."  *Id.* at 13.  The Court
12 concluded that the FAC failed to allege facts sufficient to allow the Court to infer that
13 Defendant Wolf Law Firm was a debt collector or was attempting to collect a debt.  *Id.*
14 at 15.

15 On May 22, 2015, Plaintiffs filed a Motion to Amend/Correct Complaint.  (ECF
16 No. 42).  On June 30, 2015, the Court issued an Order granting Plaintiffs' Motion for
17 Leave to File Second Amended Complaint. (ECF No. 46). On June 30, 2015, Plaintiffs
18 filed a Second Amended Complaint ("SAC"), which became the operative pleading.
19 (ECF No. 47).

20 On July 14, 2015, Defendant M&T filed a Motion to Dismiss Plaintiffs' Second
21 Amended Complaint. (ECF No. 48).  On August 3, 2015, Plaintiffs filed an opposition.
22 (ECF No. 51).  On August 10, 2015, Defendant M&T filed a reply.  (ECF No. 53).

23 On July 16, 2015, Defendant Safeguard filed a Motion to Dismiss Plaintiffs'
24 Second Amended Complaint.  (ECF No. 49).  On August 3, 2015, Plaintiffs filed an
25 opposition.  (ECF No. 52).  On August 10, 2015, Defendant Safeguard filed a reply.
26 (ECF No. 54).

27 On July 21, 2015, Defendant Wolf Law Firm filed a Motion to Dismiss Plaintiffs'
28 Second Amended Complaint.  (ECF No. 50).  On August 10, 2015, Plaintiffs filed an

opposition.  (ECF No. 55).  On August 17, 2015, Defendant Wolf Law Firm filed a

reply.  (ECF No. 56).

### ALLEGATIONS OF COMPLAINT

Plaintiff Victoria Amelina "is alleged to have incurred certain financial

obligations for a home mortgage account with Bank of America." (ECF No. 35 ¶47).

"Sometime thereafter, but before July 25, 2013, [Plaintiff Victoria Amelina] allegedly

fell behind in the payments allegedly owed on the alleged debt." *Id.* ¶ 50.  "[T]he

alleged debt was assigned, placed, or otherwise transferred to Lakeview Loan Servicing

who subsequently assigned, placed, or otherwise transferred the debt to M&T Bank for

collection." *Id.* ¶51.

"On or about July 25, 2013, M&T Bank mailed a letter to [Plaintiff Victoria

Amelina]" which

> expressed that the "servicing" of [Plaintiff Victoria Amelina's] mortgage
> loan account was being transferred from Bank of America to M&T Bank,
> effective on or about August 2, 2013; that "Bank of America will stop
> accepting payments on August 1, 2013"; and "[M&T Bank] will begin
> accepting payments from [Plaintiff Victoria Amelina] effective August 2,
> 2013."

*Id.* ¶ 52-53.

"On or about August 14, 2013, M&T Bank mailed a letter to [Plaintiff Victoria

Amelina].  *Id.* ¶ 55.  The letter stated, in part:

> 1) M&T was now servicing [Plaintiff Victoria Amelina's] mortgage;

> 2) The amount of debt in connection with the mortgage was '$236,704.14;'

> 3) Pursuant to the FDCPA, [Plaintiff Victoria Amelina] had thirty days to dispute
> the amount of debt and request a verification of the alleged debt; and

> 4) The name of the creditor to whom the debt was owed was a company called
> 'Lakeview Loan Servicing'

*Id.* ¶ 58.  "Twenty three days later, on September 9, 2013, [Plaintiff Victoria Amelina]

disputed the debt, in writing, with M&T Bank, consistent with the thirty day time

requirement of the FDCPA and California's Rosenthal Act for disputing debt." *Id.* ¶

60.  "Consequently, pursuant to 15 U.S.C. § 1692g(b), and Cal. Civ. Code § 1788.17,

M&T Bank was now required to cease collection of the debt until [] it obtained verification of the debt and produced that verification to [Plaintiff Victoria Amelina], in writing." *Id.* ¶ 61.

"[F]rom September 17, 2013 through February 5, 2014, M&T Bank sent multiple collection letters to [Plaintiff Victoria Amelina], each time demanding payment, and each time violating the FDCPA and California's Rosenthal Act in that they were collecting without verification." *Id.* ¶ 63. "By communicating with [Plaintiff Victoria Amelina] by mail before validating the debt, as required pursuant to 15 U.S.C. § 1692g(b), M&T Bank violated 15 U.S.C. §1692g and Cal. Civ. Code § 1788.17. *Id.* ¶ 64. "[T]he natural consequence of [the letters] was to harass, oppress, or abuse a person in connection with the collection of a debt." *Id.* ¶ 65. "M&T Bank initiated this onslaught of letters as to Plaintiff [] in an effort to abusively mislead and coerce her into paying more than was actually owed to M&T Bank." *Id.* ¶ 69. "During all relevant times, M&T Bank refused to provide validation or fully explain who 'Lakeview Loan Servicing' was and the relationship between the different entities listed in the letters." *Id.* ¶ 53.

"Subsequently, at the instruction of M&T, Safeguard Properties, LLC sent [Plaintiff Victoria Amelina] a pink postcard with printing clearly visible on both sides to anyone who had access to Plaintiff's mail or processed it." *Id.* ¶ 71. "This postcard was sent to [Plaintiff Victoria Amelina] for the purpose of conveying information regarding a debt directly or indirectly to [Plaintiff Victoria Amelina], and was also for the purpose of collecting this alleged debt." *Id.* ¶ 73. The postcard stated the following:

> Dear Property Resident
>
> Safeguard Properties, LLC is conducting a monthly audit on behalf of M&T Bank in order to verify the occupancy of your property.
>
> Please contact our Special Operator at 866-969-9859 to confirm only that you are presently residing at this property.
>
> Thank you.
>
> Mortgagor: You are entitled to contact M&T Bank regarding a face to face interview at our Buffalo NY Office.  800-724-1633.

*Id.* ¶ 74.  "The purpose of this communication with [Plaintiff Victoria Amelina] was to convey information regarding a debt directly or indirectly to [Plaintiff Victoria Amelina], specifically, the name and telephone number of M&T to encourage [Plaintiff Victoria Amelina] to contact M&T Bank so that M&T Bank could collect the debt alleged to be owed, in violation of the FDCPA and California's Rosenthal Act."  *Id.* ¶ 75.  "Through these actions, Defendant Safeguard was taking actions to facilitate M&T's effort to collect the alleged debt."  *Id.* ¶ 76.

"On January 4, 2014, Safeguard, at the instruction of M&T Bank sent an agent to Plaintiffs' home."  *Id.* ¶ 83.  At the instruction of Safeguard and M&T [B]ank, the intruder attempted to physically enter the home of [Plaintiff Victoria Amelina] and her minor children.  *Id.* ¶ 84.  "[Plaintiff Victoria Amelina] was not home during this incident, however, her children, A.A., D.S., and B.S., who were nine, twelve, and seventeen years of age respectively, were at home."  *Id.* ¶85.  "During this incident, the intruder attempted to force entry into the home."  *Id.* ¶86.  "A.A. repeatedly asked who was at the door, and the intruder failed to identify himself, responding only by demanding that A.A. open the door and allow him immediate entry into the property."  *Id.* ¶ 88.  "The intruder then continued to batter on the door with more force and eventually told A.A. that if she did not open the door immediately, her parents would 'be in big trouble.'"  *Id.* ¶ 90.  "Through these actions, Defendant Safeguard at the instruction and assistance of M&T Bank, intended and took effort to effect dispossession and disablement of Plaintiffs' property . . . ."  *Id.* ¶ 102.

"Subsequently, on January 28, 2014, M&T Bank sent another letter to [Plaintiff Victoria Amelina], in an attempt to collect a debt, still without verifying the alleged debt.  *Id.* ¶ 103.  "This letter stated, in part, that [Plaintiff Victoria Amelina's] 'mortgage documents have been forwarded to our attorney's office for foreclosure proceedings' and that 'all communications concerning the mortgage must now be directed to: Wolf Law Firm . . . .'"  *Id.* ¶ 105.

"Subsequently, on January 30, 2014, M&T Bank sent two more letters to

[Plaintiff Victoria Amelina], stating that the foreclosure process had begun but [Plaintiff Victoria Amelina] still had alternatives if she contacted M&T Bank, even though [Plaintiff Victoria Amelina] had previously been told not to contact M&T Bank but contact only Wolf Law Firm." *Id.* ¶ 109. "In reality, M&T Bank had not begun foreclosure proceedings, and was using this false, deceptive, or misleading representation or means in connection with the collection of debt to coerce payment from [Plaintiff Victoria Amelina] . . . ." *Id.* ¶ 110.

"On April 28, 2014, the Wolf Law Firm sent [Plaintiff Victoria Amelina] ten (10) identical letters . . . . [Plaintiff Victoria Amelina] received all of these letters at once a few days later." *Id.* ¶ 112. "In response, Plaintiff sent Defendant a request for validation within 30 days of receiving Wolf's April 28, 2014 letters, just as she had previously done with M&T Bank." *Id.* ¶ 115. "[O]n or about July of 2014 Wolf continued its abusive behavior and sent ten (10) more copies of another letter dated July 22, 2014." *Id.* ¶ 116. "Each of these letters urged Plaintiff Victoria Amelina to pay the alleged debt or suffer the consequences of foreclosure." *Id.* ¶¶ 113, 118. "The purpose for sending all of these letters from a law firm was to intimidate and embarrass [Plaintiff Victoria Amelina] and her family and to alert third parties that [Plaintiff Victoria Amelina] had legal problems." *Id.* ¶¶ 114, 120. "[O]nce Wolf recorded a Notice of Trustee Sale, Wolf mailed an additional twenty-two (22) copies to Plaintiff of the Notice . . . ." *Id.* ¶ 121. "Wolf's only purpose of sending twenty-two (22) letters is to intimidate and harass [Plaintiff Victoria Amelina]." *Id.* ¶ 122.

"On at least two other occasions, [Plaintiff Victoria Amelina and her] family noticed strangers conducting surveillance on Plaintiffs' home, which included again trying to open Plaintiffs' entrance door, looking through windows, and taking pictures of the outside and inside of Plaintiffs' home (through the windows)." *Id.* ¶ 126. "In reality, these visits by Safeguard, at the instruction of M&T Bank, were intimidation attempts which Safeguard and M&T Bank try to justify by stating that the intrusions are simply efforts to secure the property." *Id.* ¶ 128.

1
2
3
4
5

> Shortly thereafter, [Plaintiff Victorianne Amelina] began noticing that Defendant was charging her for 'Home Inspections' on her monthly mortgage statements. The dates referenced for the 'Home Inspection' entries on [Plaintiff Victoria Amelina's] monthly mortgage statments from M&T Bank were consistent with the dates when [Plaintiff Victoria Amelina] and Plaintiffs' family noticed strangers conducting surveillance around Plaintiffs' home in order to stalk and harass Plaintiffs and their family.

6   *Id.* ¶ 129. "M&T Bank engaged in conduct the natural consequence of which was to

7   harass, oppress, or abuse a person in connection with the collection of a debt . . . ." *Id.*

8   ¶ 130.

9       "As a result of M&T Bank's illegal behavior, Plaintiffs and Plaintiffs' family

10   have not felt safe in their own home for months, and are in constant fear for their

11   physical safety as well as having to endure the mental anguish that such conduct brings.

12   "A.A. is afraid to sleep without her lights on, out of fear that the intruder or some other

13   agent of M&T Bank or Safeguard will try to break into the house again." *Id.* ¶ 135.

14   "[Plaintiff Victoria Amelina] is experiencing intense anxiety, and has difficulty sleeping

15   at night, causing her to be drowsy and lethargic." *Id.* ¶ 136. "[Plaintiff Victoria

16   Amelina] feels helpless and fears for the safety of herself and her family." *Id.* ¶ 137.

17   "As a result of M&T Bank and Safeguard's relentless collection tactics [Plaintiff

18   Victoria Amelina] has been diagnosed with severe depression and anxiety and has been

19   prescribed anti-depressant medication." *Id.* ¶ 138. "Defendants have continued sending

20   collection letters to [Plaintiff Victoria Amelina], which aggravates [her] stress, anxiety,

21   and depression." *Id.* ¶ 40.

22       Plaintiffs assert five claims including (1) violation of the Fair Debt Collection

23   Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq.; (2) violation of the Rosenthal Fair

24   Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.32; (3) negligent infliction

25   of emotional distress; (4) intentional infliction of emotional distress; and (5) invasion

26   of privacy. *Id.* at 20-25.

27

28                           **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

### FEDERAL LAW CLAIM: FDCPA

The FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair practices in the collection of consumer debts. *See* 15 U.S.C. § 1692. To state a claim under the FDCPA, a plaintiff must allege facts that establish that

> (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*See Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1113 (N.D. Cal. 2014) (*citing Gomez v. Wells Fargo Home Morg.*, 2011 WL 5834949, at *5 (N.D. Cal. Nov.

21, 2011)).

"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects, or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The complaint must plead "factual content that allows the court to draw the reasonable inference" that Defendants are "debt collectors." *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013) (finding that Plaintiff's complaint "fails to provide any factual basis from which we could possibly infer that the principal purpose of Wells Fargo's business is the collection of debt. Rather, the complaint's factual matter, viewed in a light most favorable to Schlegels, establishes only that debt collection is some part of Wells Fargo's business, which is insufficient to state a claim under the FDCPA.").

**1.     Defendant M&T**

In the prior Order granting Defendants' motions to dismiss Plaintiffs' FAC, the Court concluded that Plaintiff Victoria Amelina[1] failed "to allege facts that would allow the Court to draw the reasonable inference that the principal purpose of Defendant M&T's business is the collection of debt." (ECF No. 35 at 10). The Court concluded that Plaintiff failed "to allege facts which show that Defendant M&T regularly collects 'debts owed or due or asserted to be owed or due another.'" *Id.* at 11 (quoting 15 U.S.C. § 1692a).

Plaintiff alleges the same facts in the SAC alleged in the FAC and added new allegations. Plaintiff alleges that "Defendant M&T Bank regularly and as part of its principal business purchases large batches of defaulted mortgage loans which it thereafter attempts to collect on, foreclose, or redeem with Housing and Urban Development for cash payment on the FHA insurance policies." (ECF No. 47 ¶ 21).

---

[1] Plaintiff Victoria Amelina is the only Plaintiff with standing to bring a claim under the FDCPA because she alone is obligated to pay the alleged debt.

1  "Defendant M&T identifies itself as a debt collector in correspondence to consumers."
2  *Id.* ¶ 22.  "Defendant M&T Bank maintains an active collections department that
3  routinely collects on defaulted mortgage accounts."  *Id.* ¶ 23.

4          Defendant M&T contends that M&T is not a "debt collector" under the FDCPA
5  because debt collection is not M&T's principal business purpose.  (ECF No. 48-1 at 4).
6  Defendant asserts that Plaintiffs acknowledge in the SAC that "only *part* of M&T's
7  principal business is to buy loans, and then as to those loans it buys, it does any of three
8  things: it either collects payments, forecloses, or redeems."  *Id.* at 4-5 (emphasis in
9  original).  Defendant asserts "that collection of payments and debt is only a small part
10 of M&T's business."  *Id.* at 5.  Defendant M&T  contends that Plaintiffs provide no
11 facts to support the allegation that M&T "regularly collects or attempts to collect the
12 debts owed to or due another."  *Id.*  Defendant M&T  contends that Plaintiffs provide
13 no facts to support the allegation that "M&T identifies itself as a debt collector in its
14 communications." *Id.*  Defendant M&T contends that as a mortgage servicing company
15 it is not a "debt collector" because "[t]he definition of 'debt collector' under the FDCPA
16 'does not include the consumer's creditors, a mortgage servicing company, or any
17 assignee of the debt.'"  *Id.* at 6 (quoting *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp.
18 2d 1218, 1224 (E.D. Cal. 2010).

19         In response, Plaintiff contends that "[b]y specifically alleging that a major part
20 of M&T Bank's principal operations is to acquire and collect on defaulted mortgages,
21 foreclose, or redeem with HUD, Plaintiffs have sufficiently plead a plausible claim that
22 collection of defaulted debts is a principal purpose of Defendant M&T Bank."  (ECF
23 No. 51 at 18).  Plaintiff asserts that even if allegations regarding M&T's principal
24 purpose are insufficient to establish it as a debt collector, "M&T Bank qualifies as a
25 debt collector by regularly collecting on defaulted debts which were originally owed
26 and due to another, after acquiring them in default status."  *Id.*  Plaintiff contends that
27 M&T's collections department "give[s] the inference that such a department is tasked
28 with collecting defaulted debts."  *Id.* at 19.  Plaintiff contends that Defendant M&T

1   Bank does not meet the requirements to be excluded from liability under the FDCPA
2   as a mortgage servicing company because Plaintiff's debt was already in default when
3   M&T acquired it. *Id.* at 19-20.

4        In response to Plaintiff's argument that Defendant should not qualify as a
5   mortgage servicer under the FDCPA because M&T acquired the loan in default status
6   (ECF No. 51 at 18), Defendant M&T contends that Plaintiffs' SAC "does not even
7   admit to delinquency at any time, much less before M&T became the Loan's servicer."
8   (ECF No. 53 at 4).  Defendant M&T contends that "while at most the SAC admits that
9   Amelina was in arrears on her Loan, M&T took over servicing before it sent its breach
10  letter and long before the trustee declared the loan in default by recording its [Notice
11  of Default] in April 2014." *Id.*

12       In order to fall within the definition of "debt collector," Plaintiffs' SAC must
13  provide a factual basis from which the Court could plausibly infer that (1) the principal
14  purpose of Defendant M&T's business is the collection of debt, or (2) that Defendant
15  M&T regularly collects debts owed or due another. *See Schlegel*, 720 F.3d at 1208. The
16  "FDCPA's definition of debt collector 'does not include the consumer's creditors, a
17  mortgage servicing company, or any assignee of the debt, so long as the debt was not
18  in default at the time it was assigned.'" *Nool v. HomeQ Servicing*, 653 F. Supp. 2d
19  1047, 1052 (E.D. Cal 2009) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208
20  (5th Cir. 1985)).  "In applying the FDCPA, courts have repeatedly distinguished
21  between a debt that is in default and a debt that is merely outstanding, emphasizing that
22  only after some period of time does an outstanding debt go into default." *Alibrandi v.*
23  *Financial Outsourcing Services, Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) (internal citations
24  and quotation marks omitted).  *See also Fontell v. Hassett*, 574 Fed. Appx. 278, 279
25  (4th Cir. 2014) ("Although 'default' is not defined by the FDCPA, a default generally
26  does not occur immediately upon a debt becoming due, unless the terms of the parties'
27  relevant agreement dictate otherwise.").

28       Whether Defendant M&T is outside the definition of debt collector under the

1   FDCPA because of M&T's status as a mortgage servicer depends on whether Plaintiff

2   Victoria Amelina's loan was in default at the time Lakeview Loan Servicing acquired

3   the loan and hired M&T Bank to service it.  Plaintiffs' SAC alleges that

4   > Sometime before July 25, 2013, [Plaintiff Victoria Amelina] is alleged to have
5   > incurred certain financial obligations for a home mortgage account with Bank of
    > America.

6   > Sometime thereafter, but before July 25, 2013, [Plaintiff Victoria Amelina]
    > allegedly fell behind in the payments allegedly owed on the alleged debt.
7   > As it is irrelevant to this action, Plaintiffs currently take no position as to
    > the validity of this alleged debt.
8
9   > Subsequently, the alleged debt was assigned placed, or otherwise transferred to
    > Lakeview Loan Servicing who subsequently assigned, placed, or otherwise
10  > transferred the debt to M&T Bank for collection

11  > On or about July 25, 2013, M&T Bank mailed a letter to Victoria . . . . This letter
    > expressed that the "servicing" of [Plaintiff Victoria Amelina's] mortgage
    > loan account was being transferred from Bank of America to M&T Bank
12  > . . . .

13  ECF No. 47 ¶¶ 47-48, 50-53.

14        The FDCPA does not define the term "default," however, other courts have

15  defined the term within the context of the FDCPA exception for mortgage servicers.

16  Courts have held that "a debt that is merely outstanding" is not a "debt that is in

17  default." *See Alibrandi*, 333 F.3d at 86.  Under this understanding of the term "default,"

18  even if Plaintiff Victoria Amelina had failed to make payments on her loan prior to

19  M&T initiating servicing, the facts alleged in the SAC are not sufficient to show that

20  the loan was in default before it was acquired by Lakeview Loan Servicing.  Plaintiffs

21  have not alleged that Plaintiff Victoria Amelina received any notice that the mortgage

22  loan agreement had been breached prior to the breach letter from M&T on August 14,

23  2013.  (ECF No. 47 at ¶ 58).  Plaintiffs provide no facts to support the allegation that

24  Plaintiff's mortgage loan was in "default" under the meaning of the FDCPA prior to

25  Lakeview Loan Servicing acquiring the loan and hiring M&T Bank to service it in July

26  2013.  Because the facts alleged in the SAC cannot support an inference that the debt

27  was in default at the time M&T began servicing it, M&T qualifies as a mortgage

28  servicer under the FDCPA.  A mortgage servicer is not a debt collector under the

1   FDCPA.

2          Even if Defendant M&T Bank did not qualify as a mortgage servicer under the

3   the FDCPA, Plaintiff has not alleged sufficient facts to show that Defendant M&T

4   would otherwise constitute a debt collector under the FDCPA.  Taking Plaintiff's

5   allegations as true, Defendant M&T

6          purchases large batches of defaulted mortgage loans which it thereafter
           attempts to collect on, foreclose, or redeem with Housing and Urban
7          Development for cash payment on FHA insurance policies. . . . identifies
           itself as a debt collector in correspondence with consumers. . . . [and]
8          maintains an active collections department that routinely collects on
           defaulted mortgage accounts.
9

10  (ECF No. 47 ¶¶21-23).  Alleging that "as part of its principal business [M&T] purchases

11  large batches of defaulted mortgage loans which it thereafter attempts to collect on,

12  foreclose, or redeem with Housing and Urban Development for cash payment" is

13  insufficient to show that debt collection is M&T's *principal* business purpose, not

14  merely a part of its business purpose.  *See Schlegel*, 720 F.3d at 1208.  Plaintiff's

15  allegation that M&T maintains a collections department is not sufficient to show that

16  M&T's principal purpose is debt collection or that M&T collects debts on behalf of

17  others rather than using its collections department to collect debts owed to M&T.

18  Plaintiff's allegation that M&T self-identifies as a debt collector in communications is

19  conclusory because Plaintiff offers no examples of these communications.  Plaintiff has

20  not shown that M&T identified itself as a debt collector in any of the communications

21  between M&T and Plaintiff.  Plaintiff has not established that M&T is a debt collector

22  under the FDCPA because the SAC does not allege sufficient facts to establish that

23  M&T Bank's principal business purpose is debt collection or that M&T "regularly

24  collects or attempts to collect . . . debts owed or due another."  15 U.S.C. § 1692a(6).

25          The Court concludes that Plaintiff has failed to state a claim against Defendant

26  M&T under the FDCPA.

27          **2.     Defendant Safeguard**

28           In the Order dismissing Plaintiffs' First Amended Complaint, this Court

1    concluded "that the factual allegations regarding the postcard contain no language to

2    support Plaintiffs' allegation that the postcard was an attempt to collect a debt." *Id.*

3    The Court concluded that

4           [w]ith respect to the alleged attempt to force entry into Plaintiffs' home,
            the factual allegations do not plausibly suggest facts to show that the
5           incident at Plaintiffs' home was an attempt to collect a debt.  The facts
            alleged fail to show that the incident was more than an attempt to verify
6           the occupancy of the property.

7    *Id.*  The Court concluded that Plaintiffs failed to allege that Defendant Safeguard's

8    conduct constituted "debt collecting" and therefore the Court did not reach the question

9    whether Defendant Safeguard is a "debt collector" under the FDCPA.  (ECF No. 35 at

10   13).

11          Plaintiffs' SAC contains the same assertions as the FAC in addition to these new

12   allegations: "Defendant Safeguard is a company that regularly collects, both directly

13   and indirectly, consumer debts from consumers."  ECF No. 47 ¶ 28.  "Defendant

14   Safeguard is a company that regularly markets its services to mortgage companies." *Id.*

15   ¶ 29.  Plaintiffs allege that

16          Defendant Safeguard advertises field services that i[t] provides to its
            clients, and among these services are communicating with delinquent
17          borrowers on behalf of mortgage companies, contacting mortgagors to
            request they call mortgage companies, and reporting back to mortgage
18          companies whether it has made contact with mortgagors and regarding the
            condition of the mortgaged properties.
19

20   *Id.* ¶ 30.  "Defendant Safeguard offers such services to its mortgage companies' clients,

21   for the purpose of facilitating debt collection, directly and indirectly."  *Id.* ¶ 31.

22   Plaintiffs allege that

23          Defendant Safeguard is a company that so regularly engages in debt
            collection activities under the FDCPA, it advertises to customers that it has
24          been involved in the lobbying efforts in Congress to exempt companies
            like  Safeguard  from  being  regulated  by  the  FDCPA,  thereby
25          acknowledging its belief that it is a debt collector under the FDCPA.

26   *Id.* ¶ 32.  "Defendant Safeguard, on its website, also offers its services to assist

27   creditor[s] and collectors such as M&T Bank to make personal visits in an attempt to

28   facilitate consumer contact with the creditor in an effort to get the consumer to pay the

alleged debt." *Id.* ¶ 33. "Defendant Safeguard instructs its employees to not use language such as 'debt' and 'collection,' in order to evade being characterized as a debt collector, despite facilitating and aiding its client with debt collection being the main objective of its operation." *Id.* ¶ 34. "Defendant Safeguard seeks out and hires former debt collectors with training in the Fair Debt Collection Practices Act." *Id.* ¶ 35. "Defendant Safeguard is currently being sued for actions similar to those raised here in the state of Illinois by the attorney general of Illinois." *Id.* ¶ 37. "Defendant Safeguard's principal and regular activities revolve around the enforcement of security interests." *Id.* ¶ 38. "Defendant Safeguard routinely takes the actions alleged herein to collect alleged debt and enforce security interests from consumers across the United States." *Id.* ¶ 39.

Plaintiff include the same allegations in the SAC as the FAC regarding Defendant Safeguard's attempt to collect a debt from Plaintiff Victoria Amelina by sending Plaintiff a postcard requesting verification of occupancy and by sending an agent to Plaintiff's home. (ECF No. 47 at 11-14). Plaintiff's SAC also adds new allegations about these incidents. With regard to the postcard, Plaintiff alleges that "[t]hrough these actions, Defendant Safeguard was taking actions to facilitate M&T's effort to collect on the alleged debt." *Id.* ¶ 76. Additionally, "Defendant Safeguard had no other purpose to leave such a postcard other than to facilitate M&T's efforts to collect on the alleged debt." *Id.* ¶ 78. With respect to Defendant Safeguard sending an agent to Plaintiff's house, Plaintiffs contend that "[t]hrough these actions, Defendant Safeguard at the instruction and assistance of M&T Bank, intended and took efforts to effect dispossession and disablement of Plaintiffs' property in violation of 15 U.S.C. 1692f(6)." *Id.* ¶ 102.

In its Motion to Dismiss, Defendant Safeguard contends that "Safeguard is not a debt collector and did not engage in debt collection conduct." (ECF No. 49-1 at 7). Defendant asserts that "Safeguard's business includes verifying residential occupancy – not debt collection." *Id.* at 14. Defendant Safeguard asserts that "[t]his Court

previously found [allegations related to the postcard Plaintiff received from Defendant Safeguard] to be insufficient to state an FDCPA claim against Safeguard." *Id.* at 8 (citing ECF No. 35).   Defendant contends that the new facts in the SAC alleging Safeguard's role as a debt collector "do not speak to any conduct actually directed at any of the Plaintiffs or even related to Plaintiffs in any way, but instead, only generally describe how Safeguard allegedly markets itself, its employment practices, and its involvement in a separate litigation in a different jurisdiction." *Id.*   Defendant Safeguard contends that "Plaintiffs have not alleged sufficient facts to show that Defendant Safeguard was attempting to collect a debt." *Id.* at 9.

The Court found that the deficiency in the FAC was Plaintiff's failure to meet a different  requirement to state a claim under the FDCPA–to establish that "the plaintiff has been the object of collection activity arising from consumer debt." (ECF No. 35 at 13); *Pratap*, 63 F. Supp. 3d at 1113.  Dismissing the FAC, the Court concluded that the postcard and agent Defendant Safeguard sent to Plaintiff's house did not create a plausible inference that Defendant Safeguard was attempting to collect a debt from Plaintiff.  (ECF No. 35 at 13).  The postcard was a request to verify occupancy and made no reference to collecting a debt.  Plaintiffs have not alleged that Safeguard's agent who came Plaintiff's home  made reference to any debt or made attempts to collect from Plaintiff.

The conclusory allegations in the SAC that the purpose of the postcard and the agent's visit were "to collect on the alleged debt" or "to effect dispossession and disablement of Plaintiffs' property" are insufficient to show that Defendant Safeguard was attempting to collect a debt. *See Sprewell*, 266 F.3d at 988 (a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences") (citation omitted); *Moss*, 572 F.3d at 969 ("for a complaint to survive a motion to dismiss, the non-conclusory factual content and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief") (citation and internal quotation marks omitted).  Because the Court

finds that the alleged conduct of Defendant Safeguard does not constitute "debt collecting," the Court need not determine whether Defendant Safeguard is a "debt collector" under the FDCPA. *See Santoro v. CTC Foreclosure Service*, 12 Fed. Appx. 476, 480 (9th Cir. 2001) ("We need not decide whether Countrywide is a debt collector under the FDCPA because we hold that the conduct, as alleged, does not constitute 'debt collectiong.'").

### 3.    Defendant Wolf Law Firm

In the prior Order dismissing the FAC, the Court concluded that Plaintiff did not sufficiently allege that Defendant Wolf Law Firm was a "debt collector" under either definition set forth in 15 U.S.C. § 1692a. (ECF No. 35 at 15) ("Plaintiffs failed to allege facts that would permit the Court to draw the reasonable inference that the principal purpose of Defendant Wolf Law Firm's business is the collection of debt." *Id.* "Plaintiffs' first amended complaint fails to allege 'factual content that allows the court to daw the reasonable inference' that Defendants are 'debt collectors.' *Schlegel*, 720 F.3d at 1208)."). *Id.*

The Court concluded "that Plaintiffs' first amended complaint fails to allege sufficient facts to show that Defendant Wolf Law Firm was attempting to collect a debt." *Id.* The Court based its conclusions on Plaintiff's failure to "provide the content of the letters sent by Defendant Wolf Law Firm in its alleged attempt to collect a debt." *Id.* The Court concluded that "[t]o the extent Plaintiffs' first amended complaint alleges that Defendant Wolf Law Firm sent Plaintiff copies of the Notice of Trustee Sale, activity related to a nonjudicial foreclosure does not constitute debt collection under the FDCPA." *Id.*

The SAC contains the allegations of the FAC and these additional allegations: "Defendant Wolf identifies itself as a debt collector in correspondence to consumers." (ECF No. 47 ¶ 25). "Defendant Wolf advertises itself on its website as a collection firm and even maintains a separate contact fax and email address for the Collections Department." *Id.* ¶ 26. With respect to the contents of the letters Wolf Law Firm sent

to Plaintiff Victoria Amelina, Plaintiffs allege "[e]ach of these letters urged Plaintiff Victoria Amelina to pay the alleged debt or suffer the consequences of foreclosure." *Id.* ¶¶ 113, 118, 123.

Defendant Wolf Law Firm contends that "Plaintiffs allegations remain insufficient to justify their contention that Wolf is a debt collector . . . or otherwise acted . . . as anything other than a foreclosure trustee." (ECF No. 50-1 at 7). Defendant Wolf Law Firm contends that because "Plaintiffs wholly fail to allege actual malice by Wolf," Defendant is entitled to immunity from the claims against it under California Civil Code section 2924(d). *Id.* At 7-9. Defendant Wolf Law Firm contends that Plaintiffs' allegations "are simply conclusory statements . . . that appear to coincide with Wolf's obligations required by California statutes in performing its trustee's duties – to notify the occupier of the property that the property was in default, and that a sale was scheduled." *Id.* at 11. Defendant Wolf Law Firm alleges that Plaintiff "fail[s] to define 'collection' or 'collection firm' or otherwise specifically allege that Wolf's principal business purpose is the collection of debts as defined under Sections 1692a(6), et al." *Id.* at 7. Defendant Wolf Law Firm contends that "since Plaintiffs did not attach the actual letters or otherwise allege the exact language utilized by Wolf," Plaintiffs' allegations that letters sent to Plaintiff Victoria Amelina urged her to pay a debt or suffer the consequences of foreclosure "fall short of what is necessary to substantiate their allegations that Wolf's conduct fell outside the scope of its duties as the foreclosure trustee." *Id.*

Plaintiff contends that "[b]y specifically alleging that a major part of Wolf's principal operations is to collect on defaulted mortgages, by collecting money or property, Plaintiffs have sufficiently plead a plausible claim that collection of defaulted debts is a principal purpose and regular activity of Wolf." (ECF No. 55 at 12). Plaintiff contends that Defendant Wolf Law Firm is not immune from suit based on its status as a trustee performing non-judicial foreclosure related activities because "Defendant Wolf went beyond what was required" to fulfill its trustee duties "by sending twenty-two

1   copies of several letters." *Id.* at 13. (citing *Natividad v. Wells Fargo Bank*, N.A., 2013
2   U.S. Dist. LEXIS 74067, *28 (N.D. Cal. May 24, 2013) ("persons who regularly or
3   principally engage in communications with debtors concerning their default that go
4   beyond the statutorily mandated communications required for foreclosure may be
5   considered debt collectors.")). Plaintiff contends that "Defendant Wolf went above and
6   beyond the requirements [California law imposes on trustees] to the point of harassment
7   and abuse by sending more excessive duplicates of the required notices." *Id.* At 16.
8   "Defendant Wolf does not even attempt to explain this series of mailings in multitude
9   was a mistake; it seems clear that Defendant Wolf intentionally took this action with
10  malice to intimidate and harass Plaintiffs." *Id.*

11        In order to state a claim under the FDCPA, Plaintiff must allege that "the plaintiff
12  has been the object of collection activity arising from a consumer debt ." *Pratap*, 63
13  F. Supp. 3d at 1113. To the extent that the SAC alleges that Defendant Wolf Law Firm
14  sent copies of the Notice of Trustee Sale, activity related to nonjudicial foreclosure does
15  not constitute debt collection under the FDCPA. *See Pratap*, 63 F. Supp. 3d at 1114
16  ("[T]he overwhelming majority of courts within the Ninth Circuit have concluded that
17  nonjudicial foreclosures do not constitute debt collection under the FDCPA.");
18  *Valenzuela v. Wells Fargo Bank Nat. Ass'n*, No. CV F 13-1620 LJO JLT, 2014 WL
19  309438, at *17 (E.D. Cal. Jan. 28, 2014) ("The complaint's limited meaningful
20  allegations address foreclosure, not debt collection activities subject to the FDCPA. In
21  the absence of facts of actionable debt collection, a claim based on the FDCPA is
22  subject to dismissal."); *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D.
23  Cal. 2008) ("[F]oreclosing on a property pursuant to a deed of trust is not the collection
24  of a debt within the meaning of the FDCPA."); *Reed v. Wells Fargo Home Mortg. Inc.*,
25  No. 10-2133, 2010 WL 5136196, at *7 (E.D. Cal. Dec. 10, 2010) ("The activity of
26  foreclosing on a property pursuant to a deed of trust is not the collection of a debt
27  within the meaning of the FDCPA . . . .").

28        Plaintiff added the allegation in the SAC that letters Plaintiffs received from

Defendant Wolf Law Firm in April and July 2014, prior to receiving the Notice of Trustee Sale "urged Plaintiff Victoria Amelina to pay the alleged debt or suffer the consequences of foreclosure." Plaintiff, however, does not provide the content of the letters or allege facts to show that the letters were outside the scope of nonjudicial foreclosure duties. Plaintiff has not alleged facts sufficient to show that these letters constituted debt collection under the FDCPA. *See Natividad v. Wells Fargo Bank, N.A.*, No. 312-cv-03646, 2013 WL 2299601, at *9 (N.D. Cal. May 24, 2013) ("given the absence of any factual allegations beyond the conclusion that Defendants 'sought to collect' money and funds, Plaintiffs have failed to allege facts that suggest [Defendants] were collecting a debt or otherwise qualify as 'debt collectors' under the Act"). Plaintiff has not sufficiently alleged that sending multiple copies of letters and the Notice of Trustee Sale went beyond the statutorily required duties of a foreclosure trustee. *See id.* ("the Court concludes that legally-mandated actions required for mortgage foreclosure are not necessarily debt collection, and that Plaintiffs have not adequately alleged that any Defendant engaged in any action beyond statutorily mandated actions for non judicial foreclosure, the Court concludes that Plaintiffs have not sufficiently pled a FDCPA claim"). Because the Plaintiff did not sufficiently allege facts to show that the activities of Defendant Wolf Law Firm constituted debt collection activity under the FDCPA, the Court finds that Plaintiff failed to state a claim under the FDCPA against Defendant Wolf Law Firm.

## STATE LAW CLAIMS

The remaining four causes of action assert violations of California state laws. Plaintiffs allege that this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

The federal supplemental jurisdiction statute provides: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A district

court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Having dismissed the federal claims asserted by Plaintiffs against

the Defendants, the Court declines to exercise supplemental jurisdiction over the state

law claims against the moving Defendants pursuant to 28 U.S.C. § 1367(c).  *See San*

*Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).

### CONCLUSION

Defendant M&T contends that "Plaintiffs have not and cannot allege any claims

against M&T, and therefore the court must grant M&T's Motion and dismiss this SAC

without leave to amend."  (ECF No. 48-1 at 2).  Defendant Safeguard contends that

"given that this is Plaintiff's third pleading effort, it is plain they cannot cure the defects

in their claims. . . . there is no basis to grant Plaintiffs leave to amend their pleadings."

(ECF No. 49-1 at 24).  Defendant Wolf Law Firm contends that "[t]his is Plaintiff's

third opportunity to sufficiently allege a cause of action against Wolf, to no avail.

Therefore, further leave to amend appears futile.  Thus, Wolf respectfully requests that

this court grant its motion with prejudice."  (ECF No. 50-1 at 11).  In response to each

motion to dismiss,  Plaintiffs state that "if this Court is persuaded that Plaintiff's SAC

suffers from any curable deficiencies, Plaintiff respectfully requests leave to amend."

(ECF Nos. 51 at 26; 52 at 31; 55 at 22).

///

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. 48, 49, 50)

are granted.  Plaintiffs may file a motion for leave to file a Third Amended Complaint

within thirty (30) days of the date this order is issued, accompanied by the proposed Third Amended Complaint.  If Plaintiffs do not file a motion to file a Third Amended Complaint within thirty (30) days of the date this order is issued, the Clerk of the Court shall close the case.

DATED:  November 17, 2015

**WILLIAM Q. HAYES**
United States District Judge