# PLAINTIFFS' EXHIBIT A

## Plaintiffs' Third Amended Complaint

*In The Case Of*

*Victoria A. Amelina, an individual; and A.A.; D.S and B.S., each individuals and minors by and through their Guardian Ad Litem, Victoria A. Amelina,*

*v.*

*Manufacturers and Traders Trust Company aka M&T Bank, Safeguard Properties, LLC, and The Wolf Law Firm, A Law Corporation,*

**14-CV-1906-WQH-NLS**

1  Jessica R. K. Dorman, Esq. (SBN: 279919)
   jessica@westcoastlitigation.com
2  Robert L. Hyde, Esq. (SBN: 227183)
   bob@westcoastlitigation.com
3  **Hyde & Swigart**
4  2221 Camino Del Rio South, Suite 101
   San Diego, CA 92108
5  Office Number:            (619) 233-7770
6  Office Fax Number:        (619) 297-1022

7  Attorneys for the Plaintiffs

8

9

10            **UNITED STATES DISTRICT COURT**
11           **SOUTHERN DISTRICT OF CALIFORNIA**

12  | | |
    |---|---|
13  | Victoria A. Amelina, an individual; and A.A.; D.S and B.S., each individuals and minors by and through their Guardian Ad Litem, Victoria A. Amelina | **Case No: 14-cv-1906-WQH-NLS** |
14  | | **Third Amended Complaint For Damages** |
15  | | |
16  | | **Jury Trial Demanded** |
17  | Plaintiffs, | |
    | v. | |
18  | | |
19  | Manufacturers and Traders Trust Company aka M&T Bank, Safeguard Properties, LLC, and The Wolf Law Firm, A Law Corporation | |
20  | | |
21  | | |
22  | | |

23

24

25

26

27

28

**INTRODUCTION**

1. Victoria A. Amelina ("Victoria"), A.A. (age 9), D.S. (age 12) and B.S. (age 17), each individuals and minors by and through their Guardian Ad Litem, Victoria A. Amelina, (collectively "Plaintiffs"), and through their attorneys, brings this action to challenge the actions of Manufacturers and Traders Trust Company aka M&T Bank ("M&T Bank"), Safeguard Properties, LLC, ("Safeguard"), and The Wolf Law Firm, A Law Corporation ("Wolf") (collectively as "Defendants"), with regard to attempts by Defendants to unlawfully and abusively collect a debt allegedly owed by Victoria A. Amelina, as well as numerous negligent and intentional common law torts and said conduct caused Plaintiffs severe monetary and emotional damage.

2. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, which Plaintiffs allege on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. Unless otherwise stated, all the conduct engaged in by Defendants took place in California.

5. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such specific violation.

6. Through this complaint, Plaintiffs do not allege that any state court judgment was entered against Plaintiffs in error, and Plaintiffs do not seek to reverse or modify any judgment of any state court.

**JURISDICTION AND VENUE**

7. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692(k), and 28 U.S.C. § 1367 for supplemental state claims.

8.  This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("Rosenthal Act").

9.  Because Defendants do business within the State of California, personal jurisdiction is established.

10. Venue is proper pursuant to 28 U.S.C. § 1391.

11. At all times relevant, Defendants conducted business within the State of California.

## PARTIES

12. Plaintiffs are natural persons who reside in the City of Chula Vista, State of California.

13. Plaintiff Victoria Amelina is the mother of Plaintiffs A.A., D.S., and B.S.

14. A.A. is nine (9) years old.

15. D.S. is twelve (12) years old.

16. B.S. is seventeen (17) years old.

17. Plaintiffs are natural persons allegedly obligated to pay a debt, and are consumers, as that term is defined by 15 U.S.C. § 1692a(3).

18. Plaintiffs are natural persons from whom a debt collector sought to collect a consumer debt which is alleged to be due and owing from Plaintiffs, and are debtors as that term is defined by California Civil Code § 1788.2(h).

19. Defendants have alleged that Plaintiff Victoria Amelina owes a consumer debt in the form of a loan for a personal residential mortgage with Bank of America.  Consequently, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

20. Bank of America and Plaintiff entered into this personal debt, a residential mortgage, on April 23, 2010 to finance a piece of California residential property, and subsequently, two years later, on or about February 1, 2013,

HYDE & SWIGART
Consumer Protection Attorneys

while the debt was still owned by Bank of America, Plaintiff is alleged to have defaulted on that loan pursuant to the contractual terms of the April 23, 2010 loan agreement between Bank of America and Plaintiff.

*Defendant M&T Bank*

21. Subsequently, Lakeview Loan Servicing purchased the defaulted home loan and quickly retained M&T Bank, a New York based bank that regularly purchases defaulted home loan mortgages for the purpose of collection, and collects on defaulted loans for other companies as well.

22. M&T Bank took on this defaulted residential mortgage in order to make a profit by collecting on this now defaulted loan. This loan was one of thousands of loans that M&T Bank has acquired over the years.

23. M&T Bank is in the business of regularly collecting on, among other things, defaulted residential loans, for profit.

24. These consumer accounts purchased by M&T Bank are purchased from such financial institutions as Bank of America; First Security Mortgage;

25. In the recent past, Defendant M&T Bank has collected thousands, and perhaps hundreds of thousands, of these defaulted consumer loans.

26. The volume of consumer loans collected by M&T Bank is enormous, with more than 24,000 defaulted consumer loans originating in late July of 2013 alone from such banks as Bank of America.

27. Defendant M&T Bank maintains an active collections department that routinely collects on defaulted mortgage accounts.

28. Once defaulted loans are acquired by Defendant M&T Bank, M&T Bank begins it efforts to collect on the defaulted loan by sending letters and initiating telephone calls on a monthly basis, if not daily. In nearly all correspondence from M&T Bank to Plaintiff Victoria, M&T Bank refers to itself as a debt collector and/or its efforts as an effort to collect on a debt [See Exhibit 1].

29.   Defendant M&T Bank accepted for service Plaintiff Victoria's defaulted loan after it was 182 days in default as defined by the mortgage note [Exhibit 2 & 3], and stated by Bank of America in its communications on April 19, 2013, May 20, 2013, and July 5, 2013 [Exhibit 4-6].

30.   Defendant M&T Bank is a creditor who demanded money and property from Plaintiffs and is therefore a debt collector under the FDCPA and Rosenthal Act.

31.   M&T Bank are persons who regularly and directly collect or attempt to collect debts asserted to be owed or due to another by purchasing and or accepting for collection defaulted residential loans in bulk and subsequently collecting on those loans in their effort to collect from their collection practices.   M&T Bank is consequently a debt collectors as that phrase is defined by 15 U.S.C. § 1692a(6).

32.   M&T Bank, in the ordinary course of business, regularly, on behalf of themselves, engages in debt collection through acts and practices in connection with the collection of consumer debts, pursuant to California Civil Code § 1788.2(b), and are therefore debt collectors as that term is defined by California Civil Code § 1788.2(c).

33.   M&T Bank does not compose or sell, or offer to compose or sell, forms, letters, and other collection media used or intended to be used for debt collection.

34.   M&T Bank is not an attorney or counselor at law.

35.   M&T Bank is located in Buffalo, New York.

36.   Subsequently, in its effort to collect from Plaintiff this defaulted personal loan for this California residential property, M&T Bank hired a California law firm to represent M&T Bank.   M&T Bank retained this law firm, Defendant Wolf Law Firm, because it specializes in collecting on such defaulted debts.

///

*Defendant Wolf*

37.  Wolf are persons who regularly and directly collect or attempt to collect debts asserted to be owed or due to another by accepting for collection defaulted residential loans in bulk and subsequently collecting on those loans in their effort to collect from their collection practices.   Wolf is consequently a debt collectors as that phrase is defined by 15 U.S.C. § 1692a(6).

38.  Wolf, in the ordinary course of business, regularly, on behalf of themselves, engages in debt collection through acts and practices in connection with the collection of consumer debts, pursuant to California Civil Code § 1788.2(b), and are therefore debt collectors as that term is defined by California Civil Code § 1788.2(c).

39.  Wolf does not compose or sell, or offer to compose or sell, forms, letters, and other collection media used or intended to be used for debt collection.

40.  Wolf is located in Irvine, California.

41.  Defendant Wolf identifies itself as a debt collector in correspondence to consumers.

42.  Defendant Wolf advertises itself on its website as a collection firm and even maintains a separate contact fax and email address for the Collections Department.

43.  Wolf advertises itself as being a law firm that has, for over twenty-five years, regularly "provided a broad array of legal and related services throughout California and nationally to lenders, servicers, investors, governmental agencies and other members of the financial services community" through "cradle-to-grave services" that include "Collection, Replevin/Claim and Delivery," all regulated debt collection practices under the FDCPA and California's Rosenthal Act.

44.  Further, Wolf is no stranger to debt collection lawsuits involving the FDCPA and California's Rosenthal Act, having been sued in federal and state court

1     many times for its abusive and illegal debt collector practices, including the

2     use of fraudulent documents to evict debtors from their property.

3     45.    Defendant Wolf is a law firm who sought the collection of money and

4     property from Plaintiffs and is therefore a debt collector under the FDCPA

5     and Rosenthal Act.

6     46.    Subsequently, after M&T Bank hired Wolf to assist M&T Bank in its debt

7     collection efforts regarding Plaintiff's alleged debt, Wolf hired another

8     company that specializes in assisting debt collection law firms like Wolf in

9     the collection of these types of defaulted residential loans.  This company is

10    Defendant Safeguard Properties, LLC.

11    *Defendant Safeguard*

12    47.    The way that Safeguard assists debt collectors in collecting debts regarding

13    real property is by having Safeguard's employees physically enter the

14    properties that are collateral for the loans that companies like Wolf and M&T

15    Bank are collecting upon, without the permission of the residents.

16    48.    Generally, the purpose of these activities is to allow Safeguard to physically

17    intimidate the residents of these properties, who are usually the debtors on the

18    defaulted loans, and to allow Safeguard to deliver collection communications

19    to those debtors demanding that the debtors contact the debt collectors for the

20    purpose of paying the debt that is alleged to be in default.  Specifically, that is

21    exactly what happened here.

22    49.    Safeguard is a person who regularly indirectly collects or attempt to collect

23    debts asserted to be owed or due to another by purchasing defaulted

24    residential loans in bulk and subsequently collecting on those loans in their

25    effort to collect from their collection practices.   Safeguard is consequently a

26    debt collectors as that phrase is defined by 15 U.S.C. § 1692a(6).

27    50.    Safeguard, in the ordinary course of business, regularly, on behalf of

28    themselves, engages in debt collection through acts and practices in

connection with the collection of consumer debts, pursuant to California Civil Code § 1788.2(b), and are therefore debt collectors as that term is defined by California Civil Code § 1788.2(c).

51. Safeguard does not compose or sell, or offer to compose or sell, forms, letters, and other collection media used or intended to be used for debt collection.

52. Safeguard is not an attorney or counselor at law.

53. Safeguard is located in Valley View, Ohio.

54. Defendant Safeguard advertises field services that is provides to its clients, and among these services are communicating with delinquent borrowers on behalf of mortgage companies, contacting mortgagers to request they call mortgage companies, and reporting back to mortgage companies whether it has made contact with mortgagors and regarding the condition of the mortgaged properties.

55. Defendant Safeguard offers such services to its mortgage companies clients, for the purpose of facilitating debt collection, directly and indirectly.

56. Defendant Safeguard is a company that so regularly engages in debt collection activities under the FDCPA, it advertises to its customers that it has been involved in the lobbying efforts in Congress to exempt companies like Safeguard from being regulated by the FDCPA, thereby acknowledging its belief that it is a debt collector under the FDCPA.

57. Defendant Safeguard, on its website, also offers its services to assist creditor and collectors such as M&T Bank to make personal visits in an attempt to facilitate the consumer to contact the creditor in an effort to get the consumer to pay on the alleged debt.

58. Defendant Safeguard instructs its employees to not use language such as "debt" and "collection," in order to evade being characterized as a debt collector, despite facilitating and aiding its client with debt collection being the main objection of its operation.

59. Defendant Safeguard seeks out and hires former debt collectors with training in the Fair Debt Collection Practices Act.

60. Defendant Safeguard is currently being sued for actions similar to those raised here in the state of Illinois by the attorney general of Illinois.

61. Defendant Safeguard's principal and regular activities revolve around the enforcement of security interests.

62. Defendant Safeguard routinely takes the actions alleged herein to collect alleged debt and enforce security interest from consumers across the United States.

63. Defendant Safeguard, in its regular practice, intimidated and invaded Plaintiffs' privacy in an attempt to secure property from Plaintiffs or in the alternative aid M&T Bank to collect money and property from Plaintiffs by facilitating communications between Plaintiffs and M&T Bank. As a result, Safeguard is a debt collector under the FDCPA and Rosenthal Act.

64. Defendants are each persons who use an instrumentality of interstate commerce and the mails in a business the principal purpose of which is the collection of debts, or who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and are therefore each a debt collector as that phrase is defined by 15 U.S.C. § 1692a(6).

65. This case involves money and property, or their equivalent, alleged to be due or owing from a natural person by reason of a a transaction between a natural person and another person in which property was acquired on credit by that natural person from such other person primarily for personal, family, and household purposes.  As such, this action arises out of a consumer debt and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

///

///

**FACTUAL ALLEGATIONS**

66.  Plaintiff Victoria entered into an Adjustable Rate Note ("Note") and Deed of Trust to purchase a home on April 23, 2010 with RPM Mortgage Company for Bank of America.

67.  This note was also serviced by Bank of America, and as a result of this note, Victoria is alleged to have incurred certain financial obligations for a home mortgage account with Bank of America.

68.  These financial obligations were primarily for personal, family or household purposes and are therefore a "debt" as that term is defined by 15 U.S.C. §1692a(5).

69.  These alleged obligations were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and are therefore a "debt" as that term is defined by California Civil Code §1788.2(d), and a "consumer debt" as that term is defined by California Civil Code §1788.2(f).

70.  This Note states the following regarding default:

BORROWER's FAILURE TO PAY
.....
(B) Default
"If Borrower defaults by failing to pay in full any monthly payment, the Lender may, except as limited by regulations of Secretary in the ease of payment defaults, requires immediate payment in full of the principal balance remaining due and all accrued interest." ....

GROUNDS FOR ACCELERATION OF DEBT
(A) Default
(i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security Instrument prior to or on the due date of the next monthly payment, or
(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing the Note.

71. Sometime thereafter, on or about February 1, 2013, Victoria defaulted on the Note by failing to make the payments due on February 1, 2013, and continued to remain in default as no payments were made subsequently to correct the default.

72. Bank of America treated this Note as in default after the February 1, 2013 payment was missed. [*See* Bank of America communications on April 19, 2013, May 20, 2013, and July 5, 2013; Exhibit 4-6.

73. On April 19, 2013 (77 days after the lan went into default), Bank of America sent a Notice of Intent to Accelerate and Foreclose to Plaintiff Victoria and stated "[t]he loan is in serious default because the required payments have not been made." *See* Exhibit 4.

74. Thereafter, on May 20, 2013 (108 days after the lan went into default), Bank of America sent another letter stating; "You are receiving this notice because your mortgage is in default, and your property will be referred to foreclosure." *See* Exhibit 5.

75. Again, on July 5, 2013 (154 days after the lan went into default), Bank of America informed Plaintiff Victoria that her loan was in default, stating, "The loan is in serious default because the required payments have not been made. *See* Exhibit 6. This letter continued to explain that the payments for February, March, April, May, June, and July had not been made and that Plaintiff Victoria would need to provide a total of $10,938.86 in order to not be in default any further.

76. Subsequently, On July 31, 2013 (180 days after the lan went into default), the alleged debt was assigned, placed, or otherwise transferred, to Lakeview Loan Servicing who subsequently assigned, placed, or otherwise transferred the debt to M&T Bank for collection. Victoria's Note was transferred from Bank

of America to Lakeview Loan Servicing along with approximately 24,000 other defaulted loans in the last few days of July 2013.

77. On August 2, 2013, Defendant M&T Bank acquired Plaintiff Victoria's defaulted loan after it was 182 days in default as defined by the mortgage note [Exhibit 2], and stated by Bank of America in its communications on April 19, 2013, May 20, 2013, and July 5, 2013 [Exhibit 4-6].

*First Communication to Plaintiff*

78. On or about July 25, 2013, M&T Bank mailed a letter to Victoria. A few days later, Victoria received that letter.

79. This July 25, 2013 letter expressed that the "servicing" of Victoria's mortgage loan account was being transferred from Bank of America to M&T Bank, effective on or about August 2, 2013; that "Bank of America will stop accepting payments August 1, 2013"; and "[M&T Bank] will begin accepting payments from [Plaintiff] effective August 2, 2013. Please send all payments on or after that date to [M&T Bank]."

*M&T Bank's Written Collection Efforts*

80. After Lakeview Loan Servicing transferred the account to M&T Bank for collection, Plaintiff began receiving collection letters from M&T Bank.

81. On or about August 14, 2013, M&T Bank mailed a letter to Victoria. A few days later, Victoria received that letter.

82. This August 14, 2013 letter, stated, in part:

1) M&T Bank was now servicing Victoria's mortgage;

2) The amount of debt in connection with the mortgage was "$236,704.14";

3) Pursuant to the FDCPA, Victoria had thirty days to dispute the amount of debt and request a verification of the alleged debt; and

4) The name of the creditor to whom the debt was owed to was a company called "Lakeview Loan Servicing."

5) The amount specified was "not the amount needed to cure the default" which would be lower.

83. This August 14, 2013 letter to Victoria was a "debt collection" as Cal. Civ. Code 1788.2(b) defines that phrase.

84. This letter to Victoria was a "communication" as that term is defined by 15 U.S.C. § 1692a(2), and an "initial communication" consistent with 15 U.S.C. § 1692g(a).

85. This communication was a "debt collection" as Cal. Civ. Code 1788.2(b) defines that phrase, and an "initial communication" consistent with Cal. Civ. Code § 1812.700(b).

86. This letter from M&T Bank, M&T Bank clearly states that the Note (Mortgage) was in default.

87. M&T knew that it was a "debt collector" and that this letter was a "debt collection" and "communication" as M&T made sure to include all of the required notices under the Rosenthal Act and FDCPA for communications.

88. Twenty three days later, on September 9, 2013, Victoria disputed the debt, in writing, with M&T Bank, consistent with the thirty day time requirement of the FDCPA and California's Rosenthal Act for disputing a debt.

89. Consequently, pursuant to 15 U.S.C. § 1692g(b), and Cal. Civ. Code § 1788.17, M&T Bank was now required to cease collection of the debt until it obtained verification of the debt and produced that verification to Victoria, in writing.

90. Notwithstanding this fact, M&T Bank thereafter continued to collect on the alleged debt without verification.

91. Specifically, from September 17, 2013 through February 5, 2014, M&T Bank sent multiple collection letters to Victoria, each time demanding payment, and each time violating the FDCPA and California's Rosenthal Act in that they were collecting without verification.

92.   By communicating with Victoria by mail before validating the debt, as required pursuant to 15 U.S.C. § 1692g(b), M&T Bank violated 15 U.S.C. § 1692g and Cal. Civ. Code § 1788.17.

93.   Some of these letters were dated the same date as each other and were delivered to Victoria all at once, the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt.

94.   In all of these letters, including the first written communication to Victoria at her California address, M&T Bank never provided Victoria with the notice required by Cal. Civ. Code § 1812.700, and in the manner prescribed by Cal. Civ. Code § 1812.700(b) and Cal. Civ. Code § 1812.701(b), to provide a notice to Plaintiff as prescribed in Cal. Civ. Code § 1812.700(a). Consequently, pursuant to Cal. Civ. Code § 1812.702, this omission by M&T Bank violated the Rosenthal Act.

95.   Further, each of these collection letters demanded an amount in excess of what Plaintiff owed; set conflicting deadlines for payment; and threatened imminent foreclosure.

96.   Throughout these letters, M&T Bank repeated, and falsely, stated, and implied, that M&T Bank was about to foreclose on Victoria's property when that was not their actual intent.

97.   M&T Bank initiated this onslaught of letters as to Plaintiff Victoria in an effort to abusively mislead and coerce her into paying more than was actually owed to M&T Bank.

98.   During all relevant times, M&T Bank refused to provide validation or fully explain who "Lakeview Loan Servicing" was and the relationship between the different entities listed in the letters.

///

///

///

*M&T Bank and Safeguard Make Empty Offers to Plaintiff*

99. Subsequently, at the instruction of M&T Bank, Safeguard Properties, LLC sent Victoria a pink postcard with printing clearly visible on both sides to anyone who had access to Plaintiff's mail or processed it.

100. Safeguard is a debt collector under the FDCPA and Rosenthal Act as their actions were directed towards Victoria in an effort to collect a debt.

101. This postcard was sent to Victoria for the purpose of conveying information regarding a debt directly or indirectly to Victoria, and was also for the purpose of collecting this alleged debt.

102. This postcard stated the following:

> Dear Property Resident
>
> Safeguard Properties, LLC is conducting a monthly audit on behalf of M&T Bank in order to verify the occupancy of your property.
>
> Please contact our Special Operator at 866-969-9859 to confirm only that you are presently residing at this property.
>
> Thank you.
>
> Mortgager: You are entitled to contact M&T Bank regarding a face to face interview at our Buffalo NY Office. 800-724-1633.

103. The purpose of this communication with Victoria was to convey information regarding a debt directly or indirectly to Victoria, specifically, the name and telephone number of M&T Bank to encourage Victoria to contact M&T Bank so that M&T Bank could collect the debt alleged to be owed, in violation of the FDCPA and California's Rosenthal Act.

104. Through these actions, Defendant Safeguard was taking actions to facilitate M&T's effort to collect on the alleged debt.

///

105.  Further, this postcard was intended to intimidate Victoria into payment of money to M&T Bank or vacate the property at which point Safeguard would then possess the property.

106.  Defendant Safeguard had no other purpose to leave such a postcard other than to facilitate M&T's efforts to collect on the alleged debt.

107.  This letter to Victoria was a "communication" as that term is defined by 15 U.S.C. § 1692a(2), and an "initial communication" consistent with 15 U.S.C. § 1692g(a).

108.  This communication was a "debt collection" as Cal. Civ. Code 1788.2(b) defines that phrase, and an "initial communication" consistent with Cal. Civ. Code § 1812.700(b).

109.  Safeguard failed within five days after its initial communication with Plaintiff, to provide written notification containing a statement that unless Plaintiff, within thirty days after receipt of that notice, disputed the validity of the debt, or any portion thereof, Safeguard would assume the debt was valid, or failed within five days after its initial communication with Plaintiff to provide a written notice containing a statement that if Plaintiff notified Safeguard in writing, within the thirty-day period that the debt, or any portion thereof, was disputed, Safeguard would obtain verification of the debt or a copy of a judgment against Plaintiff and a copy of such verification or judgment would be mailed to Plaintiff by Safeguard and that Safeguard would provide Plaintiff with the name and address of the original creditor. This omission by Safeguard violated 15 U.S.C. § 1692g.

110.  Safeguard failed to disclose in this initial written communication with the consumer that Defendant was attempting to collect a debt and that any information obtained would be used for that purpose, or failed to disclose in subsequent communications that the communication from a debt collector. Consequently, Safeguard violated 15 U.S.C. § 1692e(11).

111. Victoria was startled, confused, and embarrassed by this postcard.

112. In reality, Victoria *did* want to meet with someone at M&T Bank to discuss the matter, but M&T Bank only offered to meet across the country.

113. Limiting the ability of consumers to meet only in person, and across the country, is an unfair and unconscionable practice by M&T Bank as they should reasonably know that someone who is behind on their mortgage does not have the funds, or ability to travel across country for a meeting.

114. Finally, inviting the mortgager to contact M&T Bank has nothing to do with securing the property. This is Safeguard's attempt to facilitate communication between Victoria and M&T Bank to aid M&T Bank in collection of an alleged debt.

*Defendants M&T Bank and Safeguard Initiate In Person Harassment of Victoria and Children*

115. On January 4, 2014, Safeguard, at the instruction of M&T Bank, sent an agent to Plaintiffs' home (hereinafter, "the intruder").

116. At the instruction of Safeguard and M&T bank, the intruder attempted to physically enter the home of Victoria and her minor children.

117. Victoria was not home during this incident, however, her children, A.A.; D.S.; and B.S., who were nine, twelve, and seventeen years of age, respectively, were at home.

118. During this incident, the intruder attempted to force entry into the home.

119. Because the intruder attempted to enter the home and without the authorization or permission of any occupants, by failing to knock, ring a doorbell, or announce his presence, and instead by trying to attempting to forcibly enter the home through a locked door, A.S., Victoria's nine year-old daughter became terrified.

///

///

120. A.A. repeatedly asked who was at the door, and the intruder failed to identify himself, responding only by demanding that A.A. open the door and allow him immediate entry into the property.

121. A.A., a child, refused to open the door to M&T Bank's agent.

122. The intruder then continued to batter on the door with more force and eventually told A.A. that if she did not open the door immediately, her parents would "be in big trouble."

123. The intruder was making a great deal of noise in his attempt to enter the property, apparently for the purpose of scaring this young girl, who then began to cry out for her older brothers who were also in the house.

124. A.A.'s brothers, D.S. and B.S., worried for their sister's safety came from the other rooms to investigate along with the family dog, who began to bark ferociously at the intruder.

125. B.S., who has a deep voice that people expect a very large imposing adult to possess, inquired as to the identity of the intruder.

126. If not for B.S. and his deep voice, the intruder would not have been deterred from his objective of entering the property and frightening the family.

127. Victoria returned home shortly thereafter and found that the children were in shock due to the intruder's actions.

128. Victoria's 9 year old daughter, A.A. was particularly traumatized by this incident, and unable to speak.

129. A.A. was also having difficulty breathing due to the anxiety and stress caused by the intruder.

130. At one point, A.A. stated to Victoria that she feared for her safety, and the safety of her parents, because she was told that if she did not open the door to the intruder, her parents would be in "big trouble."

131. A.A. was only able to be calmed and reassured after her family crafted a fiction about the incident in an effort to calm her down.

132. Victoria and her sons all convinced A.A. that the man at the door was a family friend playing a very bad joke, and that no one was going to be in trouble.

133. Since that day, the family has maintained the charade in order to keep A.A. from being terrified of the incident, even though Victoria, her husband, and the other children, all know what was really going on and that M&T Bank and Safeguard were ruthless in their attempts to collect on the alleged debt.

134. Defendant Safeguard claims that is only acts to secure property and makes no effort to collect any debts, however, Defendant Safeguard routinely takes actions above and beyond what would be reasonable behavior to secure property, by abusing and harassing alleged debtors like Plaintiffs in an effort to intimidate them into paying their debts.

135. Through these actions, Defendant Safeguard at the instruction and assistance of M&T Bank, intended and took efforts to effect dispossession and disablement of Plaintiffs' property in violation of 15 U.S.C. 1692f(6)

*M&T Bank Finally Retains an Attorney to Initiate Foreclosure*

136. Subsequently, on January 28, 2014, M&T Bank sent another letter to Victoria, in an attempt to collect a debt, still without verifying the alleged debt.

137. Through this conduct, M&T Bank engaged in conduct the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt.

138. This letter stated, in part, that Victoria's "mortgage documents have been forwarded to our attorney's office for foreclosure proceedings" and that "[a]ll communications concerning the mortgage must now be directed to:"

> Wolf Law Firm
> 2955 Main St 2nd Floor
> Irvine CA 92614
> (949) 720-9200

139. Through this conduct, M&T Bank threatened to take action that cannot legally be taken or that was not intended to be taken, in violation of 15 U.S.C. § 1692e(5) and Cal. Civ. Code § 1788.17.

140. Through this conduct, M&T Bank took or threatened to take any nonjudicial action to effect dispossession or disablement of property when there was no present intention to take possession of the property in violation of 15 U.S.C. § 1692f(6)(B) and Cal. Civ. Code § 1788.17.

141. Victoria was subsequently never contacted by "Wolf Law Firm" regarding any foreclosure proceedings until four months later, in April of 2014.

*M&T Bank Continues to Send Letters After*
*Telling Plaintiff to Contact Only The Wolf Law Firm*

142. Subsequently, on January 30, 2014, M&T Bank sent two more letters to Victoria, stating that the foreclosure process has begun but Victoria still had alternatives if she contacted M&T Bank, even though Victoria had previously been to not told contact M&T Bank but contact only Wolf Law Firm.

143. In reality, M&T Bank had not begun foreclosure proceedings, and was using this false, deceptive, or misleading representations or means in connection with the collection of a debt to coerce payment from Victoria, in violation of the FDCPA and California's Rosenthal Act.

144. Further, M&T Bank's previous letter instructed Victoria to deal only with Wolf Law Firm with regard to the mortgage, and Victoria was now misled as to why she still being contacted by M&T Bank.

*The Wolf Law Firm Finally Contacts Victoria*

145. On April 28, 2014, the Wolf Law Firm sent Victoria ten (10) identical packets, five (5) by certified mail, and five (5) by regular mail, each addressed to Plaintiff Victoria at her residential address.   Victoria received all of these packets at once a few days later. *See* Exhibit 7.

///

146. Each of these packets included the following enclosures: 1) "NOTICE UNDER THE FAIR DEBT COLLECTION PRACTICES ACT", 2) a letter explaining that the non-judicial foreclosure process had begun, and 3) recorded Notice of Default and election to sell under deed of trust.

147. The Notice under the FDCPA provided all of the required notices under the FDCPA for an initial communication and explained that a foreclosure could be stopped if the default has been cured..

148. While the recorded documents were required to be sent as the trustee under California Foreclosure laws, the other two letters included in each of the ten (10) packets, were solely for the purpose of encouraging Plaintiff Victoria to pay the defaulted debt and outside the scope of a protected foreclosure trustee activities.

149. A further purpose for sending all of these letters from a law firm was to intimidate and embarrass the Victoria and her family and to alert third parties that Victoria had legal problems.

150. These April 28, 2014 letters to Victoria were each a "communication" as that term is defined by 15 U.S.C. § 1692a(2), and an "initial communication" consistent with 15 U.S.C. § 1692g(a).

151. These April 28, 2014 letters were each a "debt collection" as Cal. Civ. Code 1788.2(b) defines that phrase, and an "initial communication" consistent with Cal. Civ. Code § 1812.700(b).

152. In response, Victoria sent the Wolf Law Firm a request for validation within 30 days of receiving Wolf's April 28, 2014 letters, just as she had previously done with M&T Bank.

153. Notwithstanding this, on or about July of 2014 Wolf continued its abusive behavior and sent ten (10)  more copies of another letter dated July 22, 2014, each addressed to Plaintiff Victoria at her residential address.

///

154. Again, the letter was sent by certified mail six (6) times and regular mail four (4) times.

155. Again, Each of these letters urged Plaintiff Victoria Amelina to pay the alleged debt or suffer the consequences of foreclosure.

156. These letters failed to provide Victoria with validation of the debt in violation of the FDCPA and California's Rosenthal Act.

157. The purpose for sending all of these letters from a law firm was to intimidate and embarrass the Victoria and her family and to alert third parties that Victoria had legal problems.

158. Additionally, once Wolf recorded a Notice of Trustee Sale, Wolf mailed an additional twenty-two (22) copies to Plaintiff of the Notice; eleven (11) certified mail, and eleven (11) by routine mail, each addressed to Plaintiff Victoria at her residential address. *See* Exhibit 8.

159. Again, each of these twenty-two (22) letters were each a "communication" as that term is defined by 15 U.S.C. § 1692a(2), and a "debt collection" as Cal. Civ. Code 1788.2(b) defines that phrase.

160. There is no reason to send anyone twenty-two (22) copies of any letter. Wolf's only purpose of sending twenty-two (22) letters is to intimidate and harass Victoria.

161. Again, Each of these letters urged Plaintiff Victoria Amelina to pay the alleged debt or suffer the consequences of foreclosure.

162. Each time Victoria received these letters, always in an envelope from a law office, the postal carrier made comments about the incident and clearly knew that Victoria and her family had legal issues, which embarrassed Victoria.

163. Again, by communicating with Victoria by mail before validating the debt, as required pursuant to 15 U.S.C. § 1692g(b), Defendant violated 15 U.S.C. § 1692g.  Because this communication did not comply with 15 U.S.C. § 1692g, this communication also violated Cal. Civ. Code § 1788.17.

*M&T Bank Sent More Agents to Lurk and Invade Plaintiffs' Privacy*

164. On at least two other occasions, Plaintiffs and Plaintiffs' family noticed strangers conducting surveillance on Plaintiffs' home, which included again trying to open Plaintiffs' entrance door, looking through windows, and taking pictures of the outside and inside of Plaintiffs' home (through the windows).

165. M&T Bank and Safeguard were persistent in their abuse. These actions went above and beyond what would be needed to determine if the property was still occupied.

166. In reality, these visits by Safeguard, at the instruction of M&T Bank, were intimidation attempts which Safeguard and M&T Bank try to justify by stating that the intrusions are simply efforts to secure the property.

167. Shortly thereafter, Victoria began noticing that M&T Bank was charging her for "Home Inspections" on her monthly mortgage statements. The dates referenced for the "Home Inspection" entries on Victoria's monthly mortgage statements from M&T Bank were consistent with the dates when Plaintiffs and Plaintiffs' family noticed strangers conducting surveillance around Plaintiffs' home in order to stalk and harass Plaintiffs and their family.

168. Through this conduct, M&T Bank and Safeguard engaged in conduct the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt. Consequently, M&T Bank and Safeguard violated 15 U.S.C. § 1692d.

169. These charges were not expressly authorized by the agreement creating the debt or permitted by law.

170. By demanding payment for "Home Inspections," M&T Bank was collecting an amount (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount was not expressly authorized by the agreement creating the debt or permitted by law.  Consequently, M&T Bank violated 15 U.S.C. § 1692f(1), and Cal. Civ. Code § 1788.17.

*Victoria and Her Family Have Suffered as a Result of Defendant's Behavior*

171. As a result of M&T Bank and Safeguard's illegal behavior, Plaintiffs and Plaintiffs' family have not felt safe in their own home for months, and are in constant fear for their physical safety as well as having to endure the mental anguish that such conduct brings.  Plaintiffs and Plaintiffs' family have been forced to modify the way they conduct their day-to-day lives in order to at least diminish M&T Bank's impact on them through their collection tactics.

172. Victoria no longer allows her daughter, A.A., to be home without Victoria or Victoria's husband present, even for short periods of time, due to the actions of M&T Bank and Safeguard.

173. Further, A.A. is afraid to sleep without her lights on, out of fear that the intruder or some other agent of M&T Bank or Safeguard will try to break into the house again.

174. Additionally, Victoria is experiencing intense anxiety, and has difficulty sleeping at night, causing her to be drowsy and lethargic.

175. Victoria feels helpless and fears for the safety of herself and her family.

176. As a result of M&T Bank and Safeguard's relentless collection tactics Victoria has been diagnosed with severe depression and anxiety and has been prescribed anti-depressant medication.

177. Also, Victoria now regularly attends sessions with a psychiatrist to help her cope with her anxiety and depression.

178. Moreover, Defendants have continued sending collection letters to Victoria, which aggravates Victoria's stress, anxiety, and depression. To mitigate these feelings, Victoria only checks her mail once a week, so as to not deal with Defendants' harassing letters on a daily basis.

///

///

///

179. Through all of these actions, Defendants have violated several provisions of the FDCPA:

- By continually engaging in conduct the natural consequence of which was to harass, oppress, or abuse a person in connection with the collection of a debt in violation of 15 U.S.C. § 1692d;

- By continually using a false, deceptive, or misleading representation or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e, e(2)(A), e(5), and e(10);

- By continually using unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f, f(1), and f(6)(B);

- By repeatedly sending collection letters to Victoria, without first validating the debt as required by 15 U.S.C. § 1692g(b) after Victoria disputed the alleged debt;

180. Through all of these actions, Defendants have violated also violated the California Rosenthal Act:

- By failing in the first written notice initially addressed to Plaintiff's California address in connection with collecting the alleged debt by Defendant, to provide a notice to Plaintiff as prescribed in Cal. Civ. Code § 1812.700 et. seq., which pursuant to Cal. Civ. Code § 1812.702, this omission by Defendant violated the Rosenthal Act.

- Further, because Defendants have violated certain portions of the federal Fair Debt Collection Practices Act which are incorporated by reference in the Rosenthal Fair Debt Collection Practices Act, through California Civil Code § 1788.17, this conduct or omission violated Cal. Civ. Code § 1788.17.

///

///

## CAUSES OF ACTION

## COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

### 15 U.S.C. §§ 1692 ET SEQ.

181. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs.

182. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

183. As a result of each and every violation of the FDCPA, Plaintiffs are entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every defendant, jointly and severally.

## COUNT II

### ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (ROSENTHAL ACT)

### CAL. CIV. CODE §§ 1788-1788.32

184. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs.

185. The foregoing acts and omissions constitute numerous and multiple violations of the Rosenthal Act, including but not limited to each and every one of the above-cited provisions of the Rosenthal Act, Cal. Civ. Code §§ 1788-1788.32

186. As a result of each and every violation of the Rosenthal Act, Plaintiffs are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from each and every defendant, jointly and severally.

///

///

## COUNT III

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### [BY ALL PLAINTIFFS AGAINST M&T BANK AND SAFEGUARD]

187. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs.

188. Defendant M&T Bank exceeded its role as a mere lender or servicer when it made empty threats to foreclose and retained Safeguard to harass Plaintiffs.

189. Defendant Safeguard exceeded its role as a property management company when it made efforts to facilitate communication between M&T Bank and Victoria.

190. Defendants M&T Bank and Safeguard had a duty to use ordinary care with Plaintiffs.

191. Defendants M&T Bank and Safeguard continued to harass Plaintiffs through letters and in person even after Victoria disputed the alleged debt owed to Defendant M&T Bank and requested that all of M&T's collection activity cease and desist until validation of the original note was provided to Victoria.

192. Defendant M&T Bank failed to take any care to reasonably investigate Victoria's claim that the amount owing on the alleged debt was too high.

193. Defendants M&T Bank and Safeguard did not take ordinary care when demanding entrance into Plaintiffs' property from Victoria nine year old daughter, A.A., without proper notice.

194. Defendants M&T Bank and Safeguard did not take ordinary care when conducting "surveillance" on Plaintiffs' home, which included trying to open Plaintiffs' entrance door and taking pictures of the outside and inside of Plaintiff's home (through the windows), where neighbors and Plaintiffs could see.

195. Defendants M&T Bank and Safeguard intentionally intruded into this expectation of privacy by conducting "surveillance" on Plaintiffs' home,

which included trying to open Plaintiffs' entrance door and taking pictures of the outside and inside of Plaintiffs' home (through the windows).

196. Defendants M&T Bank and Safeguard did not take ordinary care to use non-threatening and non-abusive language with Plaintiffs.

197. The representations and actions made by Defendants M&T Bank and Safeguard were false and improper and at all times mislead Plaintiff or they were negligent in that Defendant should have known that their representations and actions were improper had they exercised ordinary care.

198. Defendants M&T Bank and Safeguard acted negligently by continuing with a course of action toward Plaintiffs that a reasonable person would have known would have a high likelihood of causing emotional distress.

199. Plaintiffs suffered severe emotional distress.

200. The conduct of Defendants M&T Bank and Safeguard was a substantial factor in causing Plaintiffs this  severe emotional distress.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### [BY ALL PLAINTIFFS AGAINST M&T BANK AND SAFEGUARD]

201. Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs.

202. Defendant Safeguard, at the instruction of M&T Bank, intentionally attempted to enter Plaintiffs' home, demanded that Victoria's nine year old daughter open the front door, and posted a misleading notice on Plaintiffs' front door in an effort to scare and harass Vicroria and her family.

203. Defendant Safeguard, at the instruction of M&T Bank, intentionally conducted "surveillance" on Plaintiffs' home, which included taking pictures of the outside and inside of Plaintiffs' home (through the windows), without Plaintiffs' consent.

///

///

204. Defendants M&T Bank and Safeguard communicated with Plaintiffs in a vicious and harassing manner while trying to get Victoria to repay her alleged debt.

205. Defendants M&T Bank and Safeguard continued their behavior of abuse even after Plaintiffs were clearly emotionally distressed.

206. Any reasonable person would know that Defendants M&T Bank and Safeguard's threats to Plaintiffs and their family would cause severe emotional distress.

207. Defendants M&T Bank and Safeguard intentionally used threats to inflict emotional distress in an effort to convince Victoria to repay her alleged debt.

208. Defendants M&T Bank and Safeguard intentionally invaded Plaintiffs' privacy in an effort to inflict emotional distress.

209. The conduct of Defendants M&T Bank and Safeguard and their persistent harassment of Plaintiffs and their family, and vicious attempts to force Victoria to repay her alleged debt was outrageous.

210. Defendants M&T Bank and Safeguard acted intentionally in a manner calculated to cause mental distress to such a level as to cause Plaintiffs to vacate their home.

211. Defendants M&T Bank and Safeguard knew that or acted with reckless disregard as to whether their conduct would likely result in harm due to mental distress.

212. Defendants M&T Bank and Safeguard intended to cause Plaintiffs emotional distress or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress while knowing that Plaintiffs were present when the conduct occurred.

213. Plaintiffs suffered severe emotional distress, including intense anxiety, sleeplessness, being diagnosed with severe depression and anxiety since Defendants M&T Bank and Safeguard's relentless collection tactics, and has

1    been prescribed anti-depressant medication.    Victoria has also been going

2    through mental health counseling sessions to help cope with her anxiety and

3    depression.

4  214.  The conduct of Defendants M&T Bank and Safeguard was a substantial factor

5    in causing Plaintiffs this  severe emotional distress.

6  215.  Plaintiffs are entitled to relief from Defendants M&T Bank and Safeguard as

7    well as punitive damages.

8                              COUNT V

9                      INVASION OF PRIVACY

10                INTRUSION INTO PRIVATE AFFAIRS

11        [BY ALL PLAINTIFFS AGAINST M&T BANK AND SAFEGUARD]

12  216.  Plaintiffs repeat, re-allege, and incorporate by reference, all other paragraphs.

13  217.  Plaintiffs had a reasonable expectation of privacy while some of the above

14    conduct took place.

15  218.  Defendants M&T Bank and Safeguard intentionally intruded into this

16    expectation of privacy by coming onto, around, and attempting to come into

17    Plaintiffs' private residence, without Plaintiffs' consent, in their efforts to

18    harass and stalk Plaintiffs and their family.

19  219.  Plaintiffs' expectation to have privacy in and with regard to their home is a

20    reasonable belief.

21  220.  Defendants M&T Bank and Safeguard intentionally intruded into this

22    expectation of privacy by attempting conducting "surveillance" on Plaintiffs'

23    home, which included trying to open Plaintiffs' entrance door and taking

24    pictures of the outside and inside of Plaintiffs' home (through the windows).

25  221.  Defendants M&T Bank and Safeguard's intrusion would be highly offensive

26    to a reasonable person.

27  ///

28  ///

222. Defendants M&T Bank and Safeguard intentionally intruded into and interjected themselves into Plaintiffs' private affairs in a malicious manner in order to persuade Victoria to repay her alleged debt.

223. Defendants M&T Bank and Safeguard invaded into Plaintiffs' privacy for commercial purposes and gain.

224. Plaintiff was harmed by this intrusion.

225. The conduct of Defendants M&T Bank and Safeguard was a substantial factor in causing Plaintiffs this harm.

226. Plaintiffs are entitled to relief from Defendants M&T Bank and Safeguard as well as punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that judgment be entered against Defendant, and Plaintiffs be awarded damages from Defendant, as follows:

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3);
- An award of actual damages pursuant to California Civil Code § 1788.30(a);
- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c);
- Actual damages pursuant to Cal. Civ. Code § 1942.5(f)(2);
- Special, general, compensatory, and punitive damages.

///

///

227.  Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

**Hyde & Swigart**

Date: December 16, 2015                    By: /s/Jessica R. K. Dorman
                                           Jessica R. K. Dorman
                                           Attorneys for Plaintiffs