

FILED

JUL 2 1 2016

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

VICTORIA A. AMELINA, and
individual; and A.A., D.S., and B.S.
each individuals and minors by and
through their Guardian Ad Litem,
Victoria A. Amelina,

Plaintiffs,

v.

MANUFACTURERS AND
TRADERS TRUST COMPANY aka
M&T BANK; SAFEGUARD
PROPERTIES, LLC; and THE WOLF
LAW FIRM, A Law Corporation,

Defendants.

CASE NO. 14cv1906-WQH-NLS

ORDER

HAYES, Judge:

The matters before the Court are (1) the Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 66) filed by Defendant The Wolf Law Firm ("Wolf"), (2) the Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 67) filed by Defendant Safeguard Properties, LLC ("Safeguard"), and (3) the Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 68) filed by Defendant Manufacturers and Traders Trust Company aka M&T Bank ("M&T").

## I. Background

On August 13, 2014, Plaintiff Victoria Amelina and Plaintiffs A.A., D.S., and B.S., each minors by and through their Guardian Ad Litem, Victoria Amelina, initiated this action by filing a Complaint in this Court. (ECF No. 1). On October 30, 2014, the

1  Court issued an Order granting the joint motion for leave to file a First Amended
2  Complaint, and the proposed First Amended Complaint ("FAC") (ECF No. 12) became
3  the operative pleading. (ECF No. 13).

4        On March 12, 2015, the Court granted Defendants' motions to dismiss (ECF
5  Nos. 18, 20, 28). (ECF No. 35). The Court concluded that Plaintiff's FAC failed to
6  allege sufficient facts to state a claim under the Fair Debt Collection Practices Act
7  ("FDCPA") against any of the Defendants.

8        On June 30, 2015, the Court issued an Order granting Plaintiffs' Motion for
9  Leave to File a Second Amended Complaint. (ECF No. 46). On June 30, 2015,
10  Plaintiffs filed a Second Amended Complaint ("SAC"). (ECF No. 47).

11        On November 17, 2015, the Court granted Defendants' motions to dismiss (ECF
12  Nos. 48, 49, 50). (ECF No. 57). The Court concluded that Plaintiffs failed to allege
13  facts to show that the activities of Defendant Wolf or Defendant Safeguard constituted
14  debt collection under the FDCPA and therefore failed to state a federal claim against
15  Defendant Wolf or Defendant Safeguard. The Court concluded that the SAC did not
16  allege sufficient facts to establish that Defendant M&T's principal business purpose
17  was debt collection or that M&T regularly collects debts owed to another entity and
18  therefore failed to state a federal claim against M&T. The Court declined to exercise
19  supplemental jurisdiction over Plaintiffs' state law claims.

20        On February 3, 2016, the Court issued an Order granting Plaintiffs' Motion for
21  Leave to File a Third Amended Complaint. (ECF No. 64). On February 3, 2016,
22  Plaintiffs filed the Third Amended Complaint ("TAC"), which is the operative pleading
23  in this case. (ECF No. 65).

24        On February 17, 2016, Defendant Wolf filed a motion to dismiss the TAC. (ECF
25  No. 66). On February 22, 2016, Defendant Safeguard filed a motion to dismiss the
26  TAC. (ECF No. 67). On February 22, 2016, Defendant M&T filed a motion to dismiss
27  the TAC (ECF No. 68). On March 7, 2016, Plaintiffs filed an opposition to Defendant
28  Wolf's motion. (ECF No. 70). On March 14, 2016, Plaintiffs filed an opposition to

1   Defendant Safeguard's motion. (ECF No. 72). On March 14, 2016, Plaintiffs also filed
2   an opposition to Defendant M&T's motion. (ECF No. 73). On March 14, 2016,
3   Defendant Wolf filed a reply. (ECF No. 71). On March 18, 2016, Defendant
4   Safeguard filed a reply. (ECF no. 74). On March 21, 2016, Defendant M&T filed a
5   reply. (ECF No. 75).

6   **II. Allegations of the Complaint**

7       "Plaintiff Victoria Amelina entered into an Adjustable Rate Note ("Note") and
8   Deed of Trust to purchase a home on April 23, 2010 with RPM Mortgage Company for
9   Bank of America." *Id.* ¶ 66. "[O]n or about February 1, 2013, Victoria defaulted on
10  the Note by failing to make payments . . . and continued to remain in default . . . ." *Id.*
11  ¶ 71. On April 19, 2013 (77 days after the loan went into default), Bank of America
12  sent a Notice of Intent to Accelerate and Foreclose to Plaintiff Victoria . . . ." *Id.* ¶ 73.
13  [O]n July 5, 2013 . . . Bank of America informed Plaintiff Victoria that her loan was
14  in default, stating, 'The loan is in serious default because the required payments have
15  not been made.'" *Id.* ¶ 75.

16          On July 31, 2013 . . . the alleged debt was assigned, placed, or otherwise
        transferred to Lakeview Loan Servicing who subsequently assigned,
17      placed, or otherwise transferred the debt to M&T Bank for collection.
        Victoria's Note was transferred . . . along with approximately 24,000
18      other defaulted loans in the last few days of July 2013.

19  *Id.* ¶ 76.

20          On or about July 25, 2013, M&T Bank mailed a letter to Victoria. . . . The
        letter expressed that "Bank of America will stop accepting payments on
21      August 1, 2013'; and '[M&T Bank] will begin accepting payments from
        [Plaintiff] effective August 2, 2013. Please send all payments on or after
22      that date to [M&T Bank]."

23  *Id.* ¶¶ 78-79. "On August 2, 2013, Defendant M&T Bank acquired Plaintiff Victoria's
24  defaulted loan . . . ." *Id.* ¶ 77.

25      "M&T Bank took on this defaulted residential mortgage in order to make a profit
26  . . . . This loan was one of the thousands of loans that M&T Bank has acquired over the
27  years." *Id.* ¶ 22. "In the recent past, Defendant M&T Bank has collected thousands,
28  and perhaps hundreds of thousands, of these defaulted consumer loans." *Id.* ¶ 25. "The

1  volume of consumer loans collected by M&T Bank is enormous, with more than

2  24,000 defaulted consumer loans originating in late July of 2013 alone from such banks

3  as Bank of America." *Id.* ¶ 26. "Defendant M&T Bank maintains an active collections

4  department that routinely collects on defaulted mortgage accounts." *Id.* ¶ 27.

5   Once defaulted loans are acquired . . . M&T Bank begins its efforts to
    collect on the defaulted loan by sending letters and initiating telephone
6   calls on a monthly basis, if not daily. In nearly all correspondence from
    M&T Bank to Plaintiff Victoria, M&T Bank refers to itself as a debt
7   collector and/or its efforts as an effort to collect on a debt . . . .

8  *Id.* ¶ 28. "Defendant M&T Bank accepted for service Plaintiff's defaulted loan after

9  it was 182 days in default as defined by the mortgage note . . . ." *Id.* ¶ 29. "M&T Bank

10  . . . regularly and directly collect[s] or attempt[s] to collect debts asserted to be owed

11  or due to another by purchasing and or accepting for collection defaulted residential

12  loans in bulk and subsequently collecting on those loans in their effort to collect from

13  their collection practices." *Id.* ¶ 31. "[I]n its effort to collect from Plaintiff this

14  defaulted personal loan for this California residential property, M&T Bank hired . . .

15  Defendant Wolf Law Firm, because it specializes in such defaulted debts." *Id.* ¶ 36.

16  "Subsequently . . . Wolf hired another Company that specializes in assisting debt

17  collection law firms like Wolf in the collection of these types of defaulted residential

18  loans. This company is Defendant Safeguard Properties, LLC." *Id.* ¶ 46.

19   "Plaintiff began receiving collection letters from M&T Bank." *Id.* ¶ 80. An

20  "August 14, 2013 letter, stated, in part: 1) M&T Bank was now servicing Victoria's

21  mortgage; 2) The amount of debt in connection with the mortgage was '$236,704.14';

22  3) Pursuant to the FDCPA, Victoria had thirty days to dispute the amount of debt and

23  request a verification of the alleged debt; and 4) The name of the creditor to whom the

24  debt was owed to was a company called 'Lakeview Loan Servicing.' . . . ." *Id.* ¶ 82.

25   "Twenty-three days later, on September 9, 2013, Victoria disputed the debt, in

26  writing, with M&T Bank . . . ." *Id.* ¶ 88. "M&T Bank was now required to cease

27  collection of the debt until it obtained verification of the debt and produced that

28  verification to Victoria, in writing." *Id.* ¶ 89. "Notwithstanding this fact, M&T Bank

thereafter continued to collect on the alleged debt without verification." *Id.* ¶ 90.
"[F]rom September 17, 2013 through February 5, 2014, M&T Bank sent multiple
collection letters to Victoria, each time demanding payment . . . ." *Id.* ¶ 91. "Some of
these letters were dated the same date as each other and were delivered to Victoria all
at once, the natural consequence of which was to harass, oppress, or abuse . . . ." *Id.*
¶ 93. "M&T Bank never provided Victoria with the notice required by Cal. Civ. Code
§ 1812.700 . . . ." *Id.* ¶ 94. "[E]ach of these collection letters demanded an amount in
excess of what Plaintiff owed; set conflicting deadlines for payment; and threatened
imminent foreclosure." *Id.* ¶ 95. "M&T Bank initiated this onslaught of letters as to
Plaintiff Victoria in an effort to abusively mislead and coerce her into paying more than
was actually owed to M&T Bank." *Id.* ¶ 97. "M&T refused to provide validation or
fully explain who 'Lakeview Loan Servicing' was . . . ." *Id.* ¶ 98.

"Subsequently, at the instruction of M&T Bank, Safeguard Properties, LLC sent
Victoria a pink postcard . . . ." *Id.* ¶ 99. "The purpose of this communication with
Victoria was to convey information regarding a debt directly or indirectly to Victoria,
specifically, the name and telephone number of M&T Bank to encourage Victoria to
contact M&T Bank so that M&T Bank could collect the debt alleged to be owed . . .
." *Id.* ¶ 103. "Victoria was startled, confused, and embarrassed by this postcard." *Id.*
¶ 111. "[I]nviting a mortgager to contact M&T Bank has nothing to do with securing
the property. This is Safeguard's attempt to facilitate communication between Victoria
and M&T Bank to aid M&T Bank in collection of an alleged debt." *Id.* ¶ 114.

"Safeguard advertises field services that it provides to its clients, and among
these services are communicating with delinquent borrowers on behalf of mortgage
companies, contacting mortgagors to request they call mortgage companies, and
reporting back to mortgage companies whether it has made contact with mortgagers
and regarding the condition of the mortgaged properties." *Id.* ¶ 54. "Defendant
Safeguard offers such services to its mortgage companies clients for the purpose of
facilitating debt collection, directly and indirectly." *Id.* ¶ 55. "Defendant Safeguard

1  . . . advertises to its customers that it has been involved in lobbying efforts in Congress

2  to exempt companies like Safeguard from being regulated by the FDCPA, thereby

3  acknowledging that it is a debt collector under the FDCPA." *Id.* ¶ 56. "Defendant

4  Safeguard, on its website, also offers its services to assist creditor and collectors such

5  as M&T Bank to make personal visits in an attempt to facilitate the consumer to

6  contact the creditor in an effort to get the consumer to pay on the alleged debt." *Id.* ¶

7  57. "Defendant Safeguard instructs its employees to not use language such as 'debt'

8  and 'collection,' in order to evade being characterized as a debt collector, despite

9  facilitating and aiding its client with debt collection being the main objection of its

10 operation." *Id.* ¶ 58. "Defendant Safeguard routinely takes the actions alleged herein

11 to collect alleged debt and enforce security interest from consumers across the United

12 States." *Id.* ¶ 62. "Defendant Safeguard, in its regular practice, intimidated and

13 invaded Plaintiffs' privacy in an attempt to secure property from Plaintiffs or in the

14 alternative aid M&T Bank to collect money and property from Plaintiffs by facilitating

15 communications between Plaintiffs and M&T Bank." *Id.* ¶ 63.

16      "On January 4, 2014, Safeguard, at the instruction of M&T Bank, sent an agent

17 to Plaintiffs' home (hereinafter, 'the intruder')." *Id.* ¶ 115. "At the instruction of

18 Safeguard and M&T Bank, the intruder attempted to physically enter the home of

19 Victoria and her minor children." *Id.* ¶ 116. "Victoria was not home . . . however, her

20 children, A.A.; D.S.; and B.S., who were nine, twelve, and seventeen years of age,

21 respectively, were at home." *Id.* ¶ 117. "Because the intruder attempted to enter the

22 home . . . without the authorization or permission of any occupants . . . attempting to

23 forcibly enter the home through a locked door, A.A., Victoria's nine year-old daughter

24 became terrified." *Id.* ¶ 119. "A.A., a child, refused to open the door to M&T Bank's

25 agent." *Id.* ¶ 121. "The intruder then continued to batter on the door with more force

26 and eventually told A.A. that if she did not open the door immediately, her parents

27 would 'be in big trouble.'" *Id.* ¶ 122. "B.S., who has a deep voice that people expect

28 a very large imposing adult to possess, inquired as to the identity of the intruder." *Id.*

¶ 125. "If not for B.S. . . . the intruder would not have been deterred from his objective of entering the property and frightening the family." *Id.* ¶ 126. "Victoria returned home shortly thereafter and found that the children were in shock due to the intruder's actions." *Id.* ¶ 127. "A.A. was particularly traumatized by this incident, and unable to speak." *Id.* ¶ 128. "A.A. was also having difficulty breathing due to the anxiety and stress caused by the intruder." *Id.* ¶ 129. "A.A. stated to Victoria that she feared for her safety, and the safety of her parents . . . ." *Id.* ¶ 130.

"Defendant Safeguard routinely takes actions above and beyond what would be reasonable behavior to secure property, by abusing and harassing alleged debtors like Plaintiffs in an effort to intimidate them into paying their debts." *Id.* ¶ 134. "Through these actions, Defendant Safeguard at the instruction and assistance of M&T Bank, intended and took efforts to effect dispossession and disablement of Plaintiffs' property . . . ." *Id.* ¶ 135.

"[O]n January 28, 2014, M&T Bank sent another letter to Victoria, in an attempt to collect a debt, still without verifying the alleged debt." *Id.* ¶ 136. "Through this conduct, M&T Bank engaged in conduct the natural consequence of which was to harass, oppress, or abuse . . . ." *Id.* ¶ 137. "This letter stated, in part, that Victoria's 'mortgage documents have been forwarded to our attorney's office for foreclosure proceedings' and that '[a]ll communications concerning the mortgage must now be directed to:' Wolf Law Firm . . . ." *Id.* ¶ 138.

"Wolf identifies itself as a debt collector in correspondence to consumers." *Id.* ¶ 41. "Defendant Wolf advertises itself on its website as a collection firm and even maintains a separate contact fax and email address for the Collections Department." *Id.* ¶ 42. "Wolf advertises itself as being a law firm that has, for over twenty-five years, regularly 'provided . . . cradle-to-grave services' that include 'Collection, Replevin/Claim and Delivery,' all regulated debt collection practices under the FDCPA and California's Rosenthal Act." *Id.* ¶ 43. "Defendant Wolf is a law firm who sought the collection of money and property from Plaintiffs . . . ." *Id.* 45.

1    "[O]n January 30, 2014, M&T Bank sent two more letters to Victoria, stating

2    that the foreclosure process has begun but Victoria still had alternatives if she

3    contacted M&T Bank, even though Victoria had previously been told not to contact

4    M&T Bank but contact only Wolf Law Firm." *Id.* ¶ 142. "In reality, M&T Bank had

5    not begun foreclosure proceedings, and was using this false, deceptive, or misleading

6    representations or means in connection with the collection of a debt to coerce payment

7    from Victoria . . . ." *Id.* ¶ 143.

8        "On April 28, 2014, the Wolf Law Firm sent Victoria ten (10) identical packets,

9    five (5) by certified mail, and five (5) by regular mail, each addressed to Plaintiff

10   Victoria at her residential address. Victoria received all of these packets at once a few

11   days later." *Id.* ¶ 145. "Each of these packets included the following enclosures: 1)

12   'NOTICE UNDER THE FAIR DEBT COLLECTION PRACTICES ACT,' 2) a letter

13   explaining that the non-judicial foreclosure process had begun, and 3) recorded Notice

14   of Default and election to sell under deed of trust." *Id.* ¶ 146. "The Notice under the

15   FDCPA provided all of the required notices under the FDCPA for an initial

16   communication and explained that a foreclosure could be stopped if the default has

17   been cured." *Id.* ¶ 147. "While the recorded documents were required to be sent as the

18   trustee under California Foreclosure laws, the other two letters included in each of the

19   ten (10) packets, were solely for the purpose of encouraging Plaintiff Victoria to pay

20   the defaulted debt and outside the scope of a protected foreclosure trustee activities."

21   *Id.* ¶ 148. "In response, Victoria sent the Wolf Law Firm a request for validation

22   within 30 days of receiving Wolf's April 28, 2014 letters, just as she had previously

23   done with M&T Bank." *Id.* ¶152.

24       "[O]n or about July of 2014 Wolf . . . sent ten (10) more copies of another letter

25   dated July 22, 2014 . . . ." *Id.* ¶ 153. "These letters failed to provide Victoria with

26   validation of the debt in violation of the FDCPA and California's Rosenthal Act." *Id.*

27   ¶ 156. "[O]nce Wolf recorded a Notice of Trustee Sale, Wolf mailed an additional

28   twenty-two (22) copies to Plaintiff of the Notice . . . each addressed to Plaintiff Victoria

at her residential address." *Id.* ¶ 158. Each of the letters sent by Defendant Wolf "urged Plaintiff Victoria Amelina to pay the alleged debt or suffer the consequences of foreclosure." *Id.* ¶ 161. "The purpose of sending all of these letters from a law firm was to intimidate and embarrass Victoria and her family and to alert third parties that Victoria had legal problems." *Id.* ¶ 157.

"On at least two other occasions, Plaintiffs and Plaintiffs' family noticed strangers conducting surveillance on Plaintiff's home, which included again trying to open Plaintiff's entrance door, looking through windows, and taking pictures of the outside and inside of Plaintiff's home (through the windows)." *Id.* ¶ 164. "[T]hese visits by Safeguard, at the instruction of M&T Bank, were intimidation attempts which Safeguard and M&T Bank try to justify by stating that the intrusions are simply efforts to secure the property." *Id.* ¶ 166.

"Shortly thereafter, Victoria began noticing that M&T Bank was charging her for 'Home Inspections' on her monthly mortgage statements. The dates referenced for the 'Home Inspection' entries . . . were consistent with the dates when Plaintiffs and Plaintiffs' family noticed strangers conducting surveillance . . . ." *Id.* ¶ 167. "By demanding payment for 'Home Inspections,' M&T Bank was collecting an amount . . . when such amount was not expressly authorized by the agreement creating the debt or permitted by law." *Id.* ¶ 170.

"As a result of M&T Bank and Safeguard's illegal behavior, Plaintiffs and Plaintiffs' family have not felt safe in their home for months, and are in constant fear for their physical safety as well as having to endure the mental anguish that such conduct brings." *Id.* ¶ 171. "Victoria is experiencing intense anxiety, and has difficulty sleeping at night, causing her to be drowsy and lethargic." *Id.* ¶ 174. "As a result of M&T Bank and Safeguard's relentless collection tactics Victoria has been diagnosed with severe depression an anxiety and has been prescribed anti-depressant medication." *Id.* ¶ 176. "Moreover, Defendants have continued sending collection letters to Victoria, which aggravates Victoria's stress, anxiety, and depression. To

1  mitigate these feelings, Victoria only checks her mail once a week, so as not to deal
2  with Defendants' harassing letters on a daily basis." *Id.* ¶ 178.

3      Plaintiffs assert five claims, including (1) violation of the Fair Debt Collection
4  Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. against all Defendants; (2)
5  violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-
6  1788.32 against all Defendants; (3) negligent infliction of emotional distress against
7  Defendants M&T and Safeguard; (4) intentional infliction of emotional distress against
8  Defendants M&T and Safeguard; and (5) invasion of privacy against Defendants M&T
9  and Safeguard.

10  **III. Legal Standard**

11      Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state
12  a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of
13  Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must
14  contain . . . a short and plain statement of the claim showing that the pleader is entitled
15  to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where
16  the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable
17  legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

18      "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'
19  requires more than labels and conclusions, and a formulaic recitation of the elements
20  of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)
21  (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must
22  accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662,
23  679 (2009). However, a court is not "required to accept as true allegations that are
24  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."
25  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a
26  complaint to survive a motion to dismiss, the non-conclusory factual content, and
27  reasonable inferences from that content, must be plausibly suggestive of a claim
28  entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th

Cir. 2009) (internal quotation marks omitted).

**IV. Judicial Notice**

   "As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, there are "two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion." *Id.* First, Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). Second, under the doctrine of incorporation by reference, "[a] district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleadings." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (internal quotation marks omitted).

   Defendant M&T and Defendant Wolf Law Firm request judicial notice of various documents related to the ownership and transfer of Plaintiff Victoria Amelina's mortgage loan. Many of these documents have been attached to the TAC by Plaintiffs. Defendant Safeguard requests judicial notice of two court cases otherwise available to the Court. The Court denies the requests for judicial notice because the documents requested to be noticed are unnecessary for the resolution of the motions to dismiss. *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

**V. Analysis**

   **A. FDCPA**

   The FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair practices in the collection of consumer debts. *See* 15 U.S.C. § 1692. To state a claim under the FDCPA, a plaintiff must allege facts that establish that

(1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect a debt qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1113 (N.D. Cal. 2014) (quoting *Gomez v. Wells Fargo Home Mortg.*, 2011 WL 5834949, at *5 (N.D. Cal. Nov. 21, 2011)).

"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects, or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The complaint must plead "factual content that allows the court to draw the reasonable inference" that Defendants are "debt collectors." *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013) (finding that the complaint "fails to provide any factual basis from which we could possibly infer that the principal purpose of Wells Fargo's business is the collection of debt. Rather, the complaint's factual matter, viewed in a light most favorable to the Schlegels, establishes only that debt collection is some part of Wells Fargo's business, which is insufficient to state a claim under the FDCPA.").

## 1. M&T

Defendant M&T contends that the Court should dismiss Plaintiffs' claims against M&T because the TAC continues to fail to make sufficient allegations that M&T qualifies as a "debt collector" under the FDCPA. M&T contends that it is not a "debt collector" because it is the servicer of the loan and its principal purpose of business is not debt collection. M&T contends that its actions did not constitute "debt collection" activities under the FDCPA. M&T contends that the minor Plaintiffs do not have standing to bring a claim under the FDCPA.

Plaintiffs contend that they have sufficiently alleged facts to show that M&T is a "debt collector" who regularly collects on defaulted debts after acquiring them in

1  default status.  Plaintiffs contend that M&T Bank does not qualify as a loan servicer,

2  exempted from the FDCPA definition of "debt collector," because Plaintiff Victoria

3  Amelina's debt was in default for at least six months before it was acquired by

4  Lakeview Loan Servicing or M&T Bank.  Plaintiffs contend that the letters M&T Bank

5  sent to Plaintiff Victoria Amelina constitute debt collection activity under the FDCPA

6  because each letter notified Plaintiff that M&T Bank was a debt collector and because

7  letters sent during the foreclosure process but not necessary to the foreclosure qualify

8  as debt collection.  Plaintiffs contend that all Plaintiffs have standing to bring FDCPA

9  claims because M&T engaged in efforts to collect property from the family and in

10 doing so, it engaged in conduct that harassed, oppressed, and/or abused all Plaintiffs.

11                    **a. "Debt Collector" Under the FDCPA**

12       In order to fall within the definition of "debt collector," Plaintiff's TAC must

13 provide a factual basis from which the Court could plausibly infer that (1) the principal

14 purpose of Defendant M&T's business is the collection of debt, or (2) that defendant

15 M&T regularly collects debts owed or due another.  *See Schlegel*, 720 F.3d at 1208.

16 The "FDCPA's definition of debt collector 'does not include the consumer's creditors,

17 a mortgage servicing company, or any assignee of the debt, so long as the debt was not

18 in default at the time it was assigned.'"  *Nool v. HomeQ Servicing*, 653 F. Supp. 2d

19 1047, 1052 (E.D. Cal. 2009) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208

20 (5th Cir. 1985)).  "In applying the FDCPA, courts have repeatedly distinguished

21 between a debt that is in default and debt that is merely outstanding, emphasizing that

22 only after some period of time does an outstanding debt go into default."  *Alibrandi v.*

23 *Financial Outsourcing Services, Inc.*, 333 F.3d 82, 86 (2d Cir. 2003) (internal citations

24 and quotations omitted).

25       In the Order dismissing the SAC, the Court stated,

26       Whether Defendant M&T is outside the definition of debt collector under
         the FDCPA because of M&T's status as a mortgage servicer depends on
27       whether Plaintiff Victoria Amelina's loan was in default at the time
         Lakeview Loan Servicing acquired the loan and hired M&T Bank to
28       service it. . . . Plaintiffs provide no facts to support the allegation that
         Plaintiff's mortgage was in "default" under the meaning of the FDCPA .

                                    - 13 -                          14cv1906-WQH-NLS

. . . Because the facts alleged in the SAC cannot support an inference that the debt was in default at the time M&T began servicing it, M&T qualifies as a mortgage servicer under the FDCPA.  A mortgage servicer is not a debt collector under the FDCPA.

(ECF No. 57 at 12-13).

The TAC alleges that Plaintiff Victoria Amelina's loan had been in default for at least 180 days at the time it was acquired by Lakeview Loan Servicing and M&T Bank was hired to collect on the loan.  Under the facts alleged in the TAC, Defendant M&T Bank does not qualify as a mortgage servicer under the FDCPA.

The TAC alleges that "Lakeview Loan Servicing purchased [Plaintiff Victoria Amelina's] defaulted home loan and quickly retained M&T Bank . . . for the purposes of collection . . . ." (TAC ¶ 21).  The TAC alleges that "M&T Bank took on this defaulted residential mortgage in order to make a profit by collecting on this now defaulted loan.  This loan was one of thousands of loans that M&T Bank has acquired over the years." *Id.* ¶ 22.  The TAC alleges that "M&T Bank is in the business of regularly collecting on, among other things, defaulted residential loans, for profit." *Id.* ¶ 23.  The TAC alleges that,

In the recent past, Defendant M&T Bank has collected thousands, and perhaps hundreds of thousands, of these defaulted consumer loans.  The volume of consumer loans collected by M&T Bank is enormous, with more than 24,000 defaulted consumer loans originating in late July of 2013 alone from such banks as Bank of America.

*Id.* ¶¶ 25-26.  The TAC alleges that "Defendant M&T Bank maintains an active collections department that routinely collects on defaulted mortgage accounts." *Id.* ¶ 27.  The TAC alleges that once M&T acquires the defaulted loans, it "begins its efforts to collect on the defaulted loan by sending letters and initiating telephone calls on a monthly basis" in which "M&T refers to itself as a debt collector and/or its efforts as an effort to collect on a debt." *Id.* ¶ 28.  The TAC alleges that "M&T Bank is a creditor who demanded money and property from Plaintiffs . . . ." *Id.* ¶ 30.  Plaintiffs have alleged sufficient allegations to support an inference that the principal business purpose of M&T Bank is the collection of debt.  Plaintiffs have sufficiently alleged that M&T Bank is a debt collector under the FDCPA.

**b. Debt Collection Activity and FDCPA Violation**

The TAC alleges that the August 14, 2013 letter M&T mailed to Plaintiff Victoria Amelina informed her that M&T was servicing her loan, stated the amount of debt owed, gave her thirty days to dispute the debt or request verification, and informed her that the debt was owed to Lakeview Loan Servicing. (TAC ¶ 82). The TAC alleges that within thirty days of receiving the letter, Plaintiff Victoria Amelina disputed the debt in writing. *Id.* ¶ 88. Plaintiffs assert that M&T violated the FDCPA by continuing to send letters to Plaintiff Victoria Amelina to collect the debt without providing verification of the debt to Plaintiff Victoria Amelina.

Under 15 U.S.C. 1692g(b),

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

The TAC alleges that M&T conducted non-foreclosure related debt collection activities that are subject to regulation under the FDCPA. *See* ECF No. 65-1. The TAC alleges sufficient facts to support an inference that Defendant M&T was engaged in debt collection activities and is subject to liability for failing to comply with the requirements of the FDCPA pursuant to 15 U.S.C. 1692g(b).

**c. Standing of Minor Plaintiffs**

Defendant M&T contends that the minor Plaintiffs do not have standing to bring a claim under the FDCPA because the FDCPA provides a private right of action only to those obligated to pay a debt, and here, only Plaintiff Victoria Amelina was obligated to pay the debt. Plaintiffs contend that all Plaintiffs have standing to bring claims under the FDCPA because each of the Plaintiffs were subjected to M&T Bank's efforts to collect money from Plaintiff Victoria Amelina and property from the family.

1 Plaintiffs contend that Defendant M&T sent agents to Plaintiffs' home to harass and
2 induce Plaintiffs to pay or vacate the property.

3 The FDCPA provides that "[a] debt collector may not engage in any conduct the
4 natural consequence of which is to harass, oppress, or abuse *any person* in connection
5 with the collection of a debt." 15 U.S.C. § 1692d (emphasis added). The FDCPA also
6 provides that "any debt collector who fails to comply with any provision of this
7 subchapter with respect to *any person* is liable to such person." 15 U.S.C. § 1692k
8 (emphasis added). Persons subjected to abusive debt collection by a debt collector who
9 was attempting to collect a debt from another person may bring an action against the
10 debt collector under sections of the FDCPA not specifically limited to consumers. *See*
11 *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 649-50 (6th Cir. 1994)
12 ("[A]bsent a limitation in the substantive provisions, the ordinary and common
13 understanding of § 1692k is that any aggrieved party may bring an action under
14 §1692e. . . . [T]he purpose of the FDCPA and the legislative history of the act also
15 support this conclusion."); *Eley v. Evans*, 476 F. Supp. 2d 531, 532-33 (E.D. Va. 2007)
16 (finding that "any aggrieved party may bring an action under the FDCPA" and
17 therefore the plaintiff who was not the consumer-debtor had standing to sue under 15
18 U.S.C. §§ 1692d, 1692e, and 1692f). Many courts have found that "any person who
19 comes in contact with the proscribed debt collection practices may bring a claim under
20 certain sections of the FDCPA." *Siberesky v. Borah, Goldstein, Altschuler & Schwartz,*
21 *P.C.*, No. 99 CIV. 3227 (JGK), 2000 WL 1448635, at *4 (S.D.N.Y. Sept. 28, 2000).
22 However, in order for a non-consumer to have standing under the FDCPA, the alleged
23 debt collection activities must have been directed at the plaintiff. *See Mathis v.*
24 *Omnium Worldwide*, No. Civ. 04-1614-AA, 2005 WL 3159663, at *3 (D. Or. Nov. 27,
25 2005) (the FDCPA "does not limit causes of actions to those brought by a 'consumer,'
26 so long as the alleged conduct was directed at the plaintiff"); *Dewey v. Assoc.*
27 *Collectors, Inc.*, 927 F. Supp. 1172, 1174 (W.D. Wis. 1996) (Congress "did not intend
28 to provide damages to those who did not experience any abusive behavior").

1    Taking the allegations as true that Defendant M&T instructed Safeguard to send

2    an agent to Plaintiffs' property and enter the Plaintiffs' home without knocking or

3    introducing himself while minor Plaintiffs were inside, the Court finds that the TAC

4    alleges sufficient facts to show that debt collection activities by Defendant M&T were

5    directed at Plaintiffs A.A., B.S., and D.S.  The Court concludes that based on the

6    allegations of the TAC, all Plaintiffs have standing to bring an FDCPA claim against

7    Defendant M&T.  M&T's motion to dismiss the FDCPA claim is denied.

8         **2. Safeguard**

9    Safeguard contends that the TAC adds no substantive allegations against

10   Safeguard and the Court has previously found the allegations to be insufficient to state

11   an FDCPA claim against Safeguard.  Safeguard contends that Plaintiffs have not

12   alleged that the agent Safeguard sent to Plaintiffs' home made any mention of a debt.

13   Safeguard contends that Safeguard's business includes verifying residential occupancy,

14   not debt collection, and Plaintiffs have not added any factual allegations to support

15   their claims that Safeguard engages in debt collection activity.

16   Plaintiffs contend that generalized allegations about Safeguard entering

17   properties that are collateral for loans and physically intimidating the residents of the

18   properties are sufficient to infer that Safeguard is regularly involved in debt collection.

19   Plaintiffs contend that the only purpose of Safeguard mailing a postcard to Plaintiffs

20   or sending an agent to Plaintiffs' residence was to harass and abuse Plaintiffs in an

21   effort to coerce Plaintiff Victoria Amelina to pay or vacate the property.

22   The TAC alleges that "Safeguard Properties, LLC sent Victoria a pink postcard

23   . . . for the purposes of conveying information regarding a debt directly or indirectly

24   to Victoria, and was also for the purpose of collecting this alleged debt." (TAC ¶¶ 99,

25   101).  The TAC alleges that the postcard stated that "Safeguard Properties, LLC is

26   conducting a monthly audit on behalf of M&T Bank in order to verify the occupancy

27   of your property.  Please contact our Special Operator . . . to confirm only that you are

28   presently residing at this property." *Id.* ¶ 102.  The postcard also informed Plaintiff

Victoria Amelina that she was "entitled to contact M&T Bank regarding a face to face interview at our Buffalo NY Office . . . ." *Id.* The TAC alleges that "The purpose of this communication . . . was to convey information regarding a debt directly or indirectly to Victoria, specifically, the name and telephone number of M&T Bank to encourage Victoria to contact M&T Bank so that M&T Bank could collect the debt alleged to be owed . . . ." *Id.* ¶ 103. The TAC alleges that "this postcard was intended to intimidate Victoria into payment of money to M&T Bank or vacate the property at which point Safeguard would then possess the property." *Id.* ¶ 105. The TAC alleges that "Safeguard had no other purpose to leave such a postcard other than to facilitate M&T's efforts to collect on the alleged debt." *Id.* ¶ 106. The TAC alleges that Safeguard aids other debt collectors by entering properties of debtors in order to intimidate the residents into paying their debts and that Safeguard did this to Plaintiffs at the instruction of M&T Bank. The TAC alleges that "Safeguard, at the instruction of M&T Bank, sent an agent to Plaintiffs' home" and "[a]t the instruction of Safeguard and M&T bank, the intruder attempted to physically enter the home of Victoria and her minor children." *Id.* ¶¶ 115-16. The TAC alleges that Safeguard's agent told Plaintiff A.A. "that if she did not open the door to the intruder, her parents would be in 'big trouble.' *Id.* ¶ 130. The TAC alleges that Safeguard conducted "surveillance on Plaintiff's home, which included . . . trying to open Plaintiffs' entrance door, looking through windows, and taking pictures of the outside and inside of Plaintiffs' home (through the windows)." *Id.* ¶ 164.

The Court has found that the allegations in the TAC are sufficient to show that Defendant M&T was a debt collector attempting to collect a debt from Plaintiff Victoria Amelina. The Court also finds that the TAC alleges sufficient facts to show that Safeguard was hired by M&T and was acting as an agent of Defendant M&T in furtherance of M&T's attempt to collect a debt. Because the TAC alleges that Safeguard was acting as an agent of a debt collector in furtherance of M&T's attempt to collect a debt from Plaintiff Victoria Amelina, Plaintiffs' allegations that Safeguard,

1   at the instruction of M&T Bank, sent an intruder to Plaintiffs' property who attempted

2   to enter Plaintiffs' home and took photographs of Plaintiffs' home outside and through

3   the windows is sufficient to state a cause of action against Defendant Safeguard under

4   the FDCPA. The Court has concluded that the TAC alleges sufficient facts to show

5   that debt collection activities were directed at all Plaintiffs and all Plaintiffs have

6   standing to sue under the FDCPA. Safeguard's motion to dismiss the FDCPA claim

7   is denied.

8                               **3. The Wolf Law Firm**

9          Defendant Wolf contends that the non-judicial foreclosure activities it engaged

10  in do not qualify as debt collection under 15 U.S.C. § 1692a(6). Wolf contends that

11  generic allegations that Wolf "is acting as a debt collector and attempting to collect a

12  debt" are not sufficient to survive a motion to dismiss. Wolf contends that Plaintiffs

13  fail to allege sufficient facts to support an inference that Wolf's principal business

14  purpose is to conduct itself as a debt collector or that Wolf acted as a debt collector

15  outside of its obligations as the foreclosure trustee.

16         Plaintiffs contend that Defendant Wolf's principal purpose is the collection of

17  debts due to another and that Wolf regularly collects on defaulted consumer debts.

18  Plaintiffs contend that the collection letters sent by Wolf during the foreclosure process

19  but not necessary to the foreclosure qualify as debt collection activities. Plaintiffs

20  contend that Wolf is liable for violating the FDCPA because it went beyond the

21  statutorily mandated communications related to foreclosure by sending collection

22  letters not related to foreclosure and by sending up to twenty-two copies of several

23  letters.

24         In the Order dismissing the SAC, the Court stated,

25         To the extent that the SAC alleges that Defendant Wolf Law Firm sent
           copies of the Notice of Trustee Sale, activity related to nonjudicial
26         foreclosure does not constitute debt collection under the FDCPA. *See*
           *Pratap*, 63 F. Supp. 3d at 1114 ('[T]he overwhelming majority of courts
27         within the Ninth Circuit have concluded that nonjudicial foreclosures do
           not constitute debt collection under the FDCPA') . . . .
28

    (ECF No. 57 at 19). Regarding the multiple copies of letters that Defendant Wolf

mailed to Plaintiffs, the Court stated,

> Plaintiff . . . does not provide the content of the letters or allege facts to show that the letters outside the scope of nonjudicial foreclosure duties. Plaintiff has not alleged facts sufficient to show that these letters constituted debt collection under the FDCPA. *See Natividad v. Wells Fargo Bank, N.A.*, No. 3:12-cv-03646, 2013 WL 2299601, at *9 (N.D. Cal. May 24, 2013) ("given the absence of any factual allegations beyond the conclusion that Defendants 'sought to collect' money and funds, Plaintiffs have failed to allege facts that suggest [Defendants] were collecting a debt or otherwise qualify as 'debt collectors' under the Act"). Plaintiff has not sufficiently alleged that sending multiple copies of letters and the Notice of Trustee Sale went beyond the statutorily required duties of a foreclosure trustee. *See id.* . . . Because the Plaintiff did not sufficiently allege facts to show that the activities of Defendant Wolf Law Firm constituted debt collection activity under the FDCPA, the Court finds that Plaintiff failed to state a claim under the FDCPA against Defendant Wolf Law Firm.

*Id.* at 20.

The TAC alleges that "M&T Bank retained . . . Wolf Law Firm, because it specializes in collecting on such defaulted debts." (TAC ¶ 36). The TAC alleges that "Defendant Wolf identifies itself as a debt collector in correspondence to consumers." *Id.* ¶ 41. The TAC alleges that "Wolf advertises itself on its website as a collection firm and even maintains a separate contact fax and email address for the Collections Department." *Id.* ¶ 42. The TAC alleges that "Wolf is a law firm who sought the collection of money and property from Plaintiffs and is therefore a debt collector under the FDCPA . . . ." *Id.* ¶ 45. The TAC alleges that on April 28, 2014, Wolf sent Plaintiff Victoria Amelina a packet of forms containing the following: "1) NOTICE UNDER THE FAIR DEBT COLLECTION PRACTICES ACT", 2) a letter explaining that the non-judicial foreclosure process had begun, and 3) recorded Notice of Default and election to sell under deed of trust." *Id.* ¶ 146.

Attached to the TAC is the "Notice of Fair Debt Collection Practices Act" dated April 28, 2014 and sent to Plaintiff Victoria Amelina by the Wolf Law Firm. The Notice informed Plaintiff Victoria Amelina that "A foreclosure action has been commenced" and advised her of her rights to dispute the validity of the debt. (ECF No. 65-7 at 2). The Notice includes the following statement: "The Wolf Firm, IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT, ANY INFORMATION

1   OBTAINED WILL BE USED FOR THAT PURPOSE." *Id.* The "Notice of Default

2   and Election to Sell Under Deed of Trust" sent to Plaintiff Victoria Amelina by Wolf

3   and attached to the TAC, includes the same disclaimer regarding Wolf's status as a debt

4   collector. *Id.* at 6.

5           The FDCPA does not apply to foreclosure activities. *See Lobato v. Acqura Loan*

6   *Services*, No. 11cv2601-WQH-JMA, 2012 WL 607624, at *5 (S.D. Cal. Feb. 23, 2012);

7   *Walker v. Equity 1 Lenders Group*, No. 09cv325-WQH-AJB, 2009 WL 1364430, at *7

8   (S.D. Cal. May 14, 2009) ("The activity of foreclosing on a property pursuant to a deed

9   of trust is not the collection of a debt within the meaning of the FDCPA or the

10   RFDCPA.") (internal quotations omitted).

11           Many courts have held that including language on letters sent to consumers

12   indicating that the sender is "a debt collector attempting to collect a debt" does not

13   raise an inference that the sender is a debt collector attempting to collect a debt under

14   the FDCPA. *See Hernandez v. Green Tree Servicing* LLC, No. 2:14-cv-1438, 2014

15   WL 2586932, at *3 (C.D. Cal. June 9, 2014) ("Plaintiff responds that he has received

16   a letter from Green Tree concerning his loan that included the disclaimer: "This

17   communication is from a debt collector. It is an attempt to collect a debt' . . . . This

18   argument fails: whether Green Tree is a debt collector under the FDCPA does not turn

19   on whether Green Tree holds itself out as a debt collector"); *Golliday v. Chase Home*

20   *Finance, LLC*, 761 F. Supp. 2d 629, 636 (W.D. Mich. 2011) ("The fact that FDCPA

21   disclaimers were sent in connection with a non-judicial foreclosure proceeding does

22   not automatically transform the defendants into 'debt collectors.' . . . [T]he use of the

23   disclaimer . . . is insufficient to raise a triable issue of fact on the question of the firm's

24   status as a debt collector."); *Stamper v. Wilson & Assoc., P.L.L.C.*, No. 3:09-cv-270,

25   2010 WL 1408585, at *8-9 (E.D. Tenn. Mar. 312, 2010) ("it is perfectly reasonable for

26   [defendant law firm] to err on the side of caution by including FDCPA disclaimers . .

27   . . if they did not include FDCPA disclaimers, they would be opening themselves up

28   to potential liabiluty under 15 U.S.C. § 1692f(6)"); *Chomilo v. Shapiro, Nrodmeyer*

*& Zielke, LLP*, Civ. No. 06-3103, 2007 WL 2695795, at *6 (D. Min. Sept. 12, 2007) ("If SNZ [the defendant law firm] includes FDCPA disclaimers in its notices then it may be seen as holdings itself out as a debt collector under the FDCPA, but if it does not include such disclaimers then it subjects itself to potential liability for failing to comply with the FDCPA if a court were to determine that SNZ is a debt collector . . . . The Court will not penalize SNZ for having to make a Hobson's choice . . . . SNZ was conducting nonjudicial mortgage foreclosure . . . It was reasonable for SNZ to err on the side of caution and include the FDCPA disclaimers in its communications to [the plaintiff]."). The "Notice Under Fair Debt Collection Practices Act" sent by Wolf to Plaintiff Victoria Amelina contains the FDCPA disclaimer that "The Wolf Firm is acting as a debt collector and is attempting to collect a debt." However, the Notice, as well as the other communications included in the packet of forms accompanying the notice, discuss the commencement of a foreclosure action and therefore is considered a communication connected to the non-judicial foreclosure. Defendant Wolf's inclusion of the disclaimer language does not transform it into a debt collector. The Court finds that the communication with Plaintiff makes it clear that Defendant Wolf was hired for the limited purpose of conducting the non-judicial foreclosure proceeding and was acting within that role.

The Court finds that the TAC does not allege sufficient facts to support a finding that Defendant Wolf's actions went outside the scope of the non-judicial foreclosure proceeding. The TAC does not allege sufficient facts to show that Defendant Wolf was engaged in debt collection activities sufficient to support a cause of action under the FDCPA. Because the Court finds that the alleged conduct of Defendant Wolf does not constitute "debt collecting," the Court need not determine whether Defendant Wolf is a "debt collector" under the FDCPA. *See Sontoro*, 12 Fed. Appx at 480. Plaintiffs have been given multiple opportunities to allege a claim against Defendant Wolf under the FDCPA and has not done so. The Court dismisses Plaintiffs' FDCPA claim against Defendant Wolf under the FDCPA with prejudice.

14cv1906-WQH-NLS

**B. State Claims Asserted Against Defendant Wolf**

Plaintiffs assert four causes of action against Defendant Safeguard for violations of California state law. Plaintiffs assert one cause of action against Defendant Wolf for violations of California state law. Plaintiffs allege that this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

The federal supplemental jurisdiction statute provides: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c). Having dismissed the federal claims asserted by Plaintiffs against the Defendants Safeguard and Wolf, the Court declines to exercise supplemental jurisdiction over the state law claims against Defendants Safeguard and Wolf pursuant to 28 U.S.C. § 1367(c). *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998).

**C. Violation of the Rosenthal Act Against M&T and Safeguard**

California incorporated the FDCPA into the Rosenthal Act under section 1788.17 of the California Civil Code. Cal. Civ. Code § 1788.17. Defendants M&T and Safeguard recognize that the Rosenthal Act mirrors the FDCPA. Because Plaintiffs have sufficiently alleged a claim against Defendants M&T and Safeguard under the FDCPA, the Court concludes that Plaintiffs have sufficiently alleged a claim against Defendants M&T and Safeguard under the Rosenthal Act, Cal. Civ. Code §§ 1788 *et seq*. M&T and Safeguard's motions to dismiss Plaintiffs' claims under the Rosenthal Act are denied.

**D. Negligent Infliction of Emotional Distress Against M&T**

Defendants M&T and Safeguard contend that California does not recognize the

1   claim of negligent infliction of emotional distress as an independent tort, but
2   recognizes it as a claim for the tort of negligence.  M&T and Safeguard contend that
3   Plaintiffs do not state a valid claim for negligence against it because no duty exists
4   between the Plaintiffs and M&T or Safeguard.  M&T contends that it did not exceed
5   the scope of its role as an ordinary lender because Safeguard, not M&T, is alleged to
6   have sent someone to go to Plaintiffs' property.

7          Plaintiffs contend that California does recognize the claim of negligent infliction
8   of emotional distress.  Plaintiffs contend that M&T and Safeguard did owe a duty to
9   Plaintiffs because Defendants M&T and Safeguard exceeded the scope of their
10  conventional roles as loan servicers.

11         In California, "negligent causing of emotional distress is not an independent tort
12  but the tort of negligence. . . . The traditional elements of duty, breach of duty,
13  causation, and damages apply." *Marlene F. v. Affiliated Psychiatric Medical Clinic,*
14  *Inc.*, 770 P.2d 278, 281 (Cal. 1989).  "Whether a defendant owes a duty of care is a
15  question of law.  Its existence depends upon the foreseeability of the risk and upon a
16  weighing of policy considerations for and against imposition of liability." *Id.*  "As a
17  general rule, a financial institution owes no duty of care to a borrower when the
18  institution's involvement in the loan transaction does not exceed the scope of its
19  conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan
20  Assn.*, 283 Cal.Rptr. 53, 56 (Cal. App. 1991).  "Liability to a borrower for negligence
21  arises only when the lender 'actively participates' in the financed enterprise 'beyond
22  the domain of the usual money lender.'" *Id.* at 57 (quoting *Connor v. Great Western
23  Sav. & Loan Assn.*, 447 P.2d 609, 616 (Cal. 1968)).

24         In this case, the TAC alleges that M&T instructed Safeguard to send an agent to
25  Plaintiffs' home and instructed "the intruder" to attempt to physically enter the
26  Plaintiffs' home.  (TAC ¶¶ 115-16).  The TAC alleges that M&T Bank and Safeguard
27  conducted home inspections "which included again trying to open Plaintiffs' entrance
28  door, looking through windows, and taking pictures of the outside and inside of

1  Plaintiffs' home (through the windows). . . . [T]hese visits . . . were intimidation

2  attempts . . . ." *Id.* ¶ 164, 166-67.  The TAC sufficiently alleges that M&T and its

3  agent, Safeguard, acted outside of the role of a conventional money lender.   The

4  allegations that M&T and its agent, Safeguard, acted outside the role of a usual money

5  lender towards Plaintiff Victoria Amelina are sufficient to infer that M&T and

6  Safeguard may owe a duty of care to Plaintiff Victoria Amelina which was breached

7  by the home visits and inspections conducted by Defendants.   The TAC alleges

8  sufficient facts regarding duty, breach, causation, and damages to support Plaintiff

9  Victoria Amelina's claim against M&T and Safeguard for negligent infliction of

10 emotional distress.

11      Plaintiffs do not respond to M&T's contention that there is no relationship and

12 no duty of care between M&T and Plaintiff Victoria Amelina's minor children.  The

13 Court finds that the TAC does not contain sufficient allegations to infer that M&T or

14 Safeguard owe a duty of care to Plaintiffs A.A., D.S., and B.S.  M&T and Safeguard's

15 motions to dismiss the claims for negligent infliction of emotional distress are denied

16 as to Plaintiff Victoria Amelina and granted as to Plaintiffs A.A., D.S., and B.S.

17      **E. Intentional Infliction of Emotional Distress Against M&T and Safeguard**

18      Defendants M&T and Safeguard contend that Plaintiffs' claims do not

19 sufficiently plead that Defendants' conduct was extreme and outrageous to support a

20 claim for intentional infliction of emotional distress.  Plaintiffs contend that M&T and

21 Safeguard's actions, including sending agents to enter Plaintiffs' property, attempt to

22 force entry, lurk around the property, and peer into the windows of Plaintiffs' home,

23 constitute extreme and outrageous behavior.    Plaintiffs contend that whether

24 Defendants' exact behavior was extreme or outrageous is an issue of fact.

25      "The elements of a cause of action for intentional infliction of emotional distress

26 are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard

27 of the probability of causing emotional distress, (3) severe emotional suffering, and (4)

28 actual and proximate causation of the emotional distress." *Molko v. Holy Spirit Assn.,*

1    762 P.2d 46, 61 (Cal. 1988), *superceded by statute on other grounds*. "To make out

2    a claim for intentional infliction of emotional distress, a plaintiff must prove, among

3    other things, that the defendant's alleged conduct was 'outrageous,' which means

4    conduct 'so extreme and outrageous to go beyond all possible bounds of decency, and

5    to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Wong*

6    *v. Tai Jing*, 189 Cal.App.4th 1354, 1379 n. 7 (2010) (citations and internal quotations

7    omitted).

8         The TAC alleges that M&T and its agents, at M&T's instruction,

9         attempted to enter Plaintiffs' home, demanded that Victoria's nine year
10        old daughter open the front door, . . . posted a misleading notice on
          Plaintiffs' front door in an effort to scare and harass Victoria and her
11        family. . . . conducted 'surveillance' on Plaintiffs' home, which included
          taking pictures of the outside and inside of Plaintiffs' home (through the
12        windows), without Plaintiffs' consent.

13   (TAC ¶¶ 202-203). The TAC alleges that M&T "communicated with Plaintiffs in a

14   vicious and harassing manner" and "continued their behavior of abuse even after

15   Plaintiffs were clearly emotionally distressed." *Id.* ¶¶ 204-205. The TAC alleges that

16   an agent of Defendants M&T and Safeguard attempted to gain entry into Plaintiffs'

17   home through a locked door without knocking or introducing himself, instructing

18   Plaintiff A.A. to open the door immediately or her parents would be in "big trouble."

19   TAC ¶¶ 119-20. The TAC alleges that Safeguard, at the instruction of M&T,

20   "conduct[ed] surveillance on Plaintiffs' home, which included again trying to open

21   Plaintiffs' entrance door, looking through windows, and taking pictures of the outside

22   and inside of Plaintiffs' home (through the windows)." TAC ¶¶ 164-66. Plaintiffs

23   allege that M&T's actions caused the Plaintiffs severe emotional suffering.

24        The TAC alleges sufficient facts regarding M&T and Safeguard's visits to

25   Plaintiffs' home to support an inference that M&T and Safeguard acted in an extreme

26   and outrageous manner with the intention required to state a claim for intentional

27   infliction of emotional distress. Whether Defendants' conduct was extreme and

28   outrageous is a question of fact that will not be decided at this stage of the proceedings.

     The Court concludes that Plaintiffs have sufficiently alleged a claim against Defendants

1 M&T and Safeguard for intentional infliction of emotional distress.  M&T and

2 Safeguard's motions to dismiss Plaintiffs' claims for intentional infliction of emotional

3 distress are denied.

4      **F. Invasion of Privacy Against M&T and Safeguard**

5      Defendant M&T contends that Plaintiffs do not state a cause of action for

6 invasion of privacy against it because M&T's actions were related to servicing the

7 unpaid loan in default. Defendant M&T asserts that the allegations that an agent went

8 to Plaintiffs' residence are made against another Defendant, not M&T.  Defendant

9 Safeguard contends that Plaintiffs do not allege any conduct by Safeguard that rises to

10 the level of seriousness or offensiveness required to support an invasion of privacy

11 claim. Plaintiffs assert that M&T and Safeguard ignore the allegations that M&T and

12 Safeguard hired and instructed an agent to attempt to enter Plaintiffs' property and

13 conduct surveillance. Plaintiffs contend that Defendants M&T and Safeguard violated

14 their privacy prior by instructing an agent to attempt to force entry into Plaintiffs'

15 residence and peer in the windows.

16      "[T]hree threshold elements . . . must be satisfied to advance a privacy claim: (1)

17 identification of a specific, legally protected privacy interest; (2) a reasonable

18 expectation of privacy; and (3) conduct by a defendant constituting a serious invasion

19 of privacy." *Dept. of Fair Employment and Housing v. Superior Court*, 99 Cal.Rptr.2d

20 615, 619 (Cal. App. 2002).  The TAC alleges that "M&T and Safeguard intentionally

21 intruded into [Plaintiffs'] expectation of privacy by coming onto, around, and

22 attempting to come into Plaintiffs' private residence, without Plaintiffs' consent, in

23 their efforts to harass and stalk Plaintiffs and their family." (TAC ¶ 218).  The TAC

24 alleges that M&T and Safeguard "attempt[ed to] conduct[] 'surveillance' on Plaintiffs'

25 home, which included trying to open Plaintiffs' entrance door and taking pictures of

26 the outside and inside of Plaintiffs' home (through the windows). *Id.* ¶ 220. The TAC

27 alleges that Plaintiffs have a reasonable expectation of privacy in their home. *Id.* ¶ 219.

28 The Court concludes that Plaintiffs have alleged sufficient facts to state a claim for

invasion of privacy against Defendants M&T and Safeguard.  M&T and Safeguard's motions to dismiss Plaintiffs' claims for invasion of privacy are denied.

## VI. Conclusion

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendant M&T (ECF No. 68) is granted in part and denied in part.  The motion to dismiss is granted as to the claims of Plaintiffs A.A., D.S., and B.S. for negligent infliction of emotional distress.  The motion to dismiss is denied as to all other claims.

IT IS FURTHER ORDERED that the motion to dismiss filed by Defendant Safeguard (ECF No. 67) is granted in part and denied in part.  The motion to dismiss is granted as to the claims of Plaintiffs A.A., D.S., and B.S. for negligent infliction of emotional distress.  The motion to dismiss is denied as to all other claims.

IT IS FURTHER ORDERED that the motion to dismiss filed by Defendant Wolf Law Firm (ECF No. 66) is granted.  The Third Amended Complaint is dismissed with prejudice as to Defendant Wolf Law Firm.

DATED:  7/21/16

_____
WILLIAM Q. HAYES
United States District Judge

- 28 -

14cv1906-WQH-NLS